[No. B007731. Second Dist., Div. Seven. June 13, 1985.]

B. W., Plaintiff and Appellant, v.
BOARD OF MEDICAL QUALITY ASSURANCE,
Defendant and Respondent.

222

224

COUNSEL

Pappy, Kaplon, Vogel & Phillips, Carmell, Charone & Widmer and Sherman Carmell for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, and Donna M. Buntaine, Deputy Attorney General, for Defendant and Respondent.

OPINION

THOMPSON, J.—In this case we are called upon to resolve the narrow question of whether the Board of Medical Quality Assurance (Board) is prohibited by Penal Code section 1000.5[1] from instituting disciplinary proceedings against a licensee, based solely on information obtained from his record of arrest, after the licensee has successfully completed a pretrial diversion program. (§§ 1000-1000.5.) For reasons to follow, we conclude that section 1000.5 applies to disciplinary proceedings of the Board and, hence, the Board is prohibited from relying solely on the arrest report of a successful divertee to institute disciplinary proceedings against him or her. Accordingly, the judgment will be reversed.

FACTUAL AND PROCEDURAL BACKGROUND

On September 29, 1978, appellant and his fiancee were arrested in Long Beach, California. It appears that appellant, who was driving home from a social visit, was stopped by the police for a traffic violation. A small quantity of cocaine was found in appellant's shirt pocket within the folds of a sheet of paper. At the time the sheet of paper was unfolded by police officers, exposing the cocaine, appellant sneezed and blew away virtually all of the cocaine. Appellant was charged with a violation of Health and Safety Code section 11350 (possession of cocaine) and Penal Code section 135 (destruction of evidence). On November 1, 1978, since appellant was a licensed physician, the Board was notified of his arrest by a printout from the Department of Justice Criminal Information and Identification System.

In connection with the criminal charges, on November 17, 1978, appellant began a pretrial diversion program pursuant to section 1000. During the period of this diversion program, in January 1979, appellant received and accepted a residency in urology at Washington University, St. Louis, Missouri, which he completed in June 1982. On May 14, 1979, appellant successfully completed the diversion program at which time the criminal case against him was dismissed, and his arrest record was expunged.

In 1975, appellant received his medical degree from the University of California at Irvine. He did his internship at St. Mary's Hospital in San

[1]Unless otherwise indicated, all references are to the Penal Code.

Francisco, California, during 1975-1976. From 1976-1977, he was in surgical residence at the same hospital. Thereafter, during 1977-1978, he was in residence in anesthesia at UCLA Medical Center in Los Angeles, California. On March 20, 1978, he was licensed as a physician and surgeon by the Board.

On December 17, 1979, the Board filed an accusation against appellant, alleging that on or about September 28, 1978, he illegally possessed cocaine in violation of Health and Safety Code section 11350 and thereby engaged in unprofessional conduct within the meaning of Business and Professions Code section 2391.5. The accusation also sought the suspension or revocation of his license.

In January 1980, the Board served a copy of the accusation, together with a notice of hearing, on appellant who, on January 11, 1980, filed a notice of defense. On October 27, 1980, after he had consulted with his attorney and the executive secretary of the Board, appellant, who was still doing his residency in urology at Washington University, St. Louis, Missouri, entered into a written stipulation with the Board. In that stipulation, he admitted to the facts alleged in the accusation and waived his rights to a hearing, reconsideration, appeal and any other rights in the California Administrative Procedure Act and the Code of Civil Procedure. He also agreed that the Board might issue a decision, based on the stipulation, revoking his certificate, provided however that the revocation be stayed and appellant be placed on probation for a period of three years on certain terms and conditions, with the probation to commence when he returned to reside or practice in California. On December 16, 1980, the Board issued an order, adopting the terms of the stipulation as its decision and making such decision effective January 16, 1981.

Appellant filed with the Board on November 20, 1981, his verified petition for termination of probation and reinstatement of his revoked certificate, together with a motion to vacate the decision, stipulation and accusation which had resulted in the disciplinary action against his certificate. In his papers he alleged, inter alia, that neither he nor any of the persons advising him were aware of the language in section 1000.5 at the time he signed the stipulation. He also alleged that the Board used information from his record of arrest as the sole basis to institute disciplinary proceedings against him in violation of section 1000.5.

On February 25, 1982, a hearing on appellant's petition was held before the Board. Appellant testified, inter alia, that, before he signed the stipulation on October 22, 1980, he consulted with his attorney and talked with Robert Rowland, executive secretary of the Board. He further testified that

he did not know about section 1000.5 at the time he signed the stipulation, but first learned about such section in September 1981. Also, the attorney, who represented appellant at the hearing and at the time he signed the stipulation, told the Board that he did not advise appellant about section 1000.5, because neither he nor the deputy attorney general handling the matter knew about the section. He further told the Board that the section first came to his attention in 1981 at which time he immediately called the deputy attorney general who had handled the matter, and was advised by this deputy that he had no knowledge of the section. The record reveals that no evidence was presented to the Board either to rebut appellant's testimony or to refute the statements made by his attorney.

On April 15, 1982, in connection with the petition, the Board issued an order terminating appellant's probation, restoring his revoked certificate upon presentation of evidence to the Board that he had successfully completed his residency program in urology at Washington University, St. Louis, Missouri, and making the decision effective May 17, 1982.

However, on July 21, 1982, the Board denied the motion to vacate, concluding (1) that the Board did not at that time have the statutory authority to reopen the matter of the accusation against appellant; (2) that sections 1000.1—1000.5 do not bar the Board from proceeding with an accusation where the person diverted holds a license to practice medicine in the State of California; and (3) that there is no statutory authority for the Board to vacate a decision regarding a discipline which has become final. On August 12, 1982, appellant filed with the Board a motion for reconsideration, which the Board declined to hear.

On November 23, 1982, appellant filed in the Superior Court of Los Angeles County a petition for a writ of mandate, seeking an order to set aside the Board's initial decision revoking his certificate on the ground that the initiation of disciplinary proceedings on the sole basis of information obtained from his arrest record violated section 1000.5. In its return to the petition, the Board admitted, inter alia, that it used the record of appellant's arrest as the sole source of information to initiate the disciplinary proceedings. In addition, the Board alleged in its return that section 1000.5 applies only to the denial of an application for licensure and not to disciplining of a licensee, and that, if such section does apply to disciplinary proceedings, appellant waived its application by signing the stipulation.

At the hearing on the petition, the trial court first determined that neither the substantial evidence test nor the independent judgment test governed the proceedings. Rather, the trial court concluded that, since the facts adduced in the administrative proceedings were undisputed and questions of statutory

construction were involved, the petition presented only questions of law. After the parties stipulated that the sole source used by the Board to initiate the disciplinary proceedings against appellant was his arrest report and argument of counsel, the trial court denied the petition, finding that section 1000.5 does not apply to protect licensees from disciplinary action. This appeal followed.

DISCUSSION

I

APPLICABILITY OF SECTION 1000.5

■ In 1972, the Legislature enacted sections 1000 to 1000.4 to authorize the courts "to 'divert' from the normal criminal process persons who are formally charged with first-time possession of drugs, have not yet gone to trial, and are found to be suitable for treatment and rehabilitation at the local level." (*People* v. *Superior Court (On Tai Ho)* (1974) 11 Cal.3d 59, 61 [113 Cal.Rptr. 21, 520 P.2d 405].) The objects to be accomplished by this legislation are two-fold: First, to permit the courts "to identify the experimental or tentative user before he becomes deeply involved with drugs, to show him the error of his ways by prompt exposure to educational and counseling programs in his own community, and to restore him to productive citizenship without the lasting stigma of a criminal conviction"; and, second, to reduce the "clogging of the criminal justice system. . . . [Citations.]" (*Id.,* at pp. 61-62; also see *Morse* v. *Municipal Court* (1974) 13 Cal.3d 149, 157 [118 Cal.Rptr. 14, 529 P.2d 46]; *People* v. *Fulk* (1974) 39 Cal.App.3d 851, 855-856 [114 Cal.Rptr. 567].)

Under this statutory scheme, if the defendant successfully completed the rehabilitation program, the charges had to be dismissed. (*People* v. *Superior Court (On Tai Ho), supra,* 11 Cal.3d at p. 67.) This, however, was the extent of the protection provided. (See former § 1000.2, added by Stats. 1972, ch. 1255, p. 2470.) Hence, the arrest record and ultimate disposition of the case were still available for use in the files of the bureau of criminal identification and investigation. (Former § 1000.3, added by Stats. 1972, ch. 1255, p. 2471; see Comment, *California's Experience With Pretrial Diversion* (1975) 7 Sw.U.L.Rev. 418, 449.)

In 1975, the Legislature, in order to provide more protection to the successful divertee, enacted section 1000.5. That section provides: "Any record filed with the Department of Justice shall indicate the disposition in those cases diverted pursuant to this chapter. Upon successful completion of a diversion program the arrest upon which the diversion was based shall

be deemed to have never occurred. The divertee may indicate in response to any question concerning his prior criminal record that he was not arrested or diverted for such offense. A record pertaining to an arrest resulting in successful completion of a diversion program shall not, without the divertee's consent, be used in any way which could result in the denial of any employment, benefit, license, or certificate."

In order to determine the applicability and scope of section 1000.5, we are guided by certain principles of statutory construction. ▪ "Penal Code sections must generally be construed ' "according to the fair import of their terms, with a view to effect its objects and to promote justice." ' [Citation.] Consistent with that general principle, appellate courts first examine the language of the code section to determine whether the words used unequivocally express the Legislature's intent. If no ambiguity, uncertainty, or doubt about the meaning of the statute appear, the provision is to be applied according to its terms without further judicial construction. [Citation.] [¶] When the language of the section is on its face ambiguous or leaves doubt, however, the court must resort to extrinsic aids to ascertain the purpose behind the statute and give the provision a judicially created meaning commensurate with that purpose. [Citations.]" (*Morse* v. *Municipal Court, supra,* 13 Cal.3d 149, 156.)

## A. *Section 1000.5 Applies Upon Successful Completion of Diversion*

▪ With these principles in mind we first examine section 1000.5 to determine when it becomes operative. It is clear from a fair reading of the diversion statute that if the defendant is diverted and referred for education, treatment, or rehabilitation, the period of diversion "shall be for no less than six months nor longer than two years." (§ 1000.2.) It is also equally clear that there is nothing in this section to bar an agency or other entity from properly using information in a divertee's arrest record either before or during the period of diversion. Thus, we conclude that section 1000.5 goes into effect *only upon the successful completion of diversion.*

## B. *Section 1000.5 Applies to Both Applicants and Licensees*

▪ The Board asserts that although section 1000.5 would bar the Board from using a successful divertee's record of arrest as a source of information in connection with his application for licensure, section 1000.5 does not apply to disciplinary proceedings against a licensee who also happens to be a successful divertee.

In support of this assertion, the Board points to the statute's use of the term "denial" as an expression of legislative intent to make a distinction

between applicants and licensees and thereby enable the Board to carry out its legislative mandate to protect the public. We disagree with such a narrow construction of the statute. ■ The diversion statute here is clearly remedial in nature and, under well-settled rules of judicial construction, such a statute is to be liberally construed to promote the objects to be accomplished by it. (*People* v. *Fulk, supra,* 39 Cal.App.3d at p. 855.)

■ First, we recognize that California courts take the position that a physician's personal use of drugs may constitute grounds for disciplinary action without reference to whether professional ability has been impaired, reasoning that the physician occupies a unique and centralized position in the overall elaborate regulatory scheme established by the Legislature to control dangerous drugs and narcotics. (See, e.g., *Weissbuch* v. *Board of Medical Examiners* (1974) 41 Cal.App.3d 924, 928-929 [116 Cal.Rptr. 479].) As the *Weissbuch* court stated, "[t]he medical doctor is an integral part of this control and in fact is the key to its successful operation. The doctor in the scheme of things literally has the 'keys to the safe' . . . ." (*Id.,* at p. 928.)

■ However, we fail to see how making a distinction in the statute between successful divertee-applicants and successful divertee-licensees, as urged by the Board, would enhance the protection of the public, or be in harmony with the object of the statute. Under the Board's construction of the statute, as a matter of logic and fact, the same qualitative person would be allowed to practice medicine. In one case, the Board would be taking the "keys to the safe" from a successful divertee-licensee. And, in the other case, the Board would be giving the same keys to a successful divertee-applicant. ■ Where, as here, the language of the statute is fairly susceptible of two constructions, one which in application will render such language reasonable, fair and harmonious with its manifest purpose, and another which will be productive of absurd consequences, the former construction will be adopted. (*Gage* v. *Jordan* (1944) 23 Cal.2d 794, 800 [147 Cal.Rptr. 387].) ■ We conclude, therefore, that the Legislature did not intend such a distinction in the application of section 1000.5.

Second, the diversion program here shares many similarities with the diversion program for impaired physicians, which was enacted in 1980 as article 14 (commencing with Bus. & Prof. Code, § 2340 et seq.) of the California Medical Practice Act. This legislation was the result of the joint concern and effort of the Board and the California Medical Association that impaired physicians be treated as an alternative to discipline. (See Gualtieri et al., *The California Experience With a Diversion Program for Impaired Physicians* (Jan. 14, 1983) 249 J. A.M.A. 226, 227.) Like the impaired

physicians' program, the dual objective of which is to protect the public health, safety, and welfare as well as to rehabilitate impaired physicians, diversion under section 1000.5 is intended "to offer a second chance to offenders who are minimally involved in crime and maximally motivated to reform, and the decision to divert is predicated on an in-depth appraisal of the background and personality of the particular individual before the court." (*People* v. *Superior Court (On Tai Ho), supra,* 11 Cal.3d at p. 66; cf. § 1000, and Bus. & Prof. Code, § 2352.)

Also, like the diversion program here where criminal proceedings are suspended during diversion, once a physician enters the diversion program for impaired physicians, the Board halts all action against the physician, whether it is investigatory or disciplinary. (See Annual Report of the Board of Medical Quality Assurance, 1980-1981, at p. 67; Gualtieri, Cosentino and Becker, *supra,* at pp. 228-229; Bus. & Prof. Code, § 2355; Cal. Admin. Code, tit. 16, § 1357.8.) Similarly, upon the successful completion of the program, the accusation is withdrawn and the participant's records are destroyed. (Bus. & Prof. Code, § 2355.)

■ In the construction of a particular statute, or in the interpretation of any of its provisions, all acts relating to the same subject, or having the same general purpose, should be read together in order to achieve a uniform and consistent legislative purpose. (See, e.g., *Isobe* v. *Unemployment Ins. Appeals Bd.* (1974) 12 Cal.3d 584, 590-591 [116 Cal.Rptr. 376, 526 P.2d 528].) ■ We conclude, therefore, that construing section 1000.5 to be applicable to both applicants and licensees is more in keeping with the dual objective of this section and the impaired physicians' program.

Finally, the Legislature in 1983 made certain amendments to section 1000, which suggest that section 1000.5 is broader in scope than that urged by the Board. First, section 1000, subdivision (a), was amended to add the violation of Health and Safety Code section 11368 (forging or altering prescriptions for narcotic drugs for personal use) to the listed violations which qualify for diversion. Second, subdivision (c) was added, which provides that successful completion of diversion for a violation relative to the forging or altering of a prescription for a narcotic drug *"shall not prohibit any administrative agency from taking disciplinary action against a licensee* or from denying a license," and that these provisions shall not be construed to expand or restrict the provisions of section 1000.5. (Italics added.)

Under the construction urged by the Board, the above italicized language would be totally unnecessary and surplusage in connection with any disciplinary action of the Board, since the prohibition of section 1000.5 applies only to applicants according to the Board's interpretation. ■ However, courts should construe all provisions of a statute together, significance being

given when possible to each word, phrase, sentence and part of the act in pursuance of the legislative purpose. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) ■ Our construction of section 1000.5 gives significance to section 1000, subdivision (c). (See, e.g., *California School Employees Assn.* v. *Compton Unified School Dist.* (1985) 165 Cal.App.3d 694, 700 [211 Cal.Rptr. 653].) Accordingly, we hold that section 1000.5 applies to both applicants and licensees, concluding that this construction is more in accord with the twofold purpose of the diversion statute.

C. *Under The Facts of This Case, Initiation of Disciplinary Proceedings Is Barred by Section 1000.5*

■ Under the facts of the present case, the issue arises whether the Board is prohibited by section 1000.5 from relying solely on information in appellant's record of arrest to institute disciplinary proceedings against him after his successful completion of diversion, even though the Board obtained such information before diversion started.

This statute provides that, after successful completion of diversion, the record pertaining to the arrest shall not be used in any way. ■ We determine that the use of the words "shall not be used" and "in any way," in referring to the record of arrest of a successful divertee, is indicative of an intent by the Legislature that the protection of section 1000.5 be given the broadest application. (See, e.g., *Burks* v. *Poppy Construction Co.* (1962) 57 Cal.2d 463, 468 [20 Cal.Rptr. 609, 370 P.2d 313]; *Curran* v. *Mount Diablo Council of The Boy Scouts* (1983) 147 Cal.App.3d 712, 728-729 [195 Cal.Rptr. 325, 38 A.L.R.4th 607].)

■ As we previously noted, it is clear that nothing in section 1000.5 prevented the Board from using information in appellant's arrest record to initiate disciplinary proceedings against him prior to his successful completion of diversion. Nor was the Board prohibited from investigating the matter to develop additional information. Had the Board initiated such proceedings prior to appellant's successful completion of diversion, based either on the information in his arrest record or on information developed from its investigation, or both, it is also clear that the Board could have compelled appellant to testify about the facts of his arrest. (See, e.g., *Gardner* v. *Broderick* (1968) 392 U.S. 273 [20 L.Ed.2d 1082, 88 S.Ct. 1913]; *Szmaciarz* v. *State Personnel Bd.* (1978) 79 Cal.App.3d 904, 917-919 [145 Cal.Rptr. 396].)

At bench, however, the Board initiated disciplinary proceedings against appellant thirteen months after it obtained information of his arrest, and

almost seven months after he had successfully completed the diversion program. Also, the Board admitted that these proceedings were initiated against appellant, based *solely* on the information obtained from his record of arrest. Under these circumstances, we find that appellant should be protected by the provisions of section 1000.5. We conclude, therefore, that the Board is prohibited by section 1000.5 from using appellant's arrest record as the sole source of information to initiate disciplinary proceedings against him, unless the appellant consented to such use. This determination is more in keeping with the legislative intent to give the protection of this section the broadest application. Also, we find that such an application of the section is consistent with the objective of the diversion statute here to restore a successful divertee to productive citizenship without the stigma of disciplinary action taken against his license.

### D. *The Stipulation Does Not Constitute Consent*

The Board contends that the protection of section 1000.5 does not apply because appellant consented to the use of his arrest record by personally signing and agreeing to the terms of the stipulation. We disagree.

It is settled law in California that a purported "waiver" of a statutory right is not legally effective unless it appears that the party charged with the waiver has been fully informed of the existence of that right, its meaning, the effect of the "waiver" presented to him, and his full understanding of the explanation. (*Bauman* v. *Islay Investments* (1973) 30 Cal.App.3d 752, 758 [106 Cal.Rptr. 889]; also see *Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 343 [107 Cal.Rptr. 309, 508 P.2d 309].)

The facts are undisputed that appellant learned about section 1000.5 several months after he signed the stipulation. Moreover, the stipulation does not itself in any way refer to section 1000.5. Also, the record does not reveal that his attorney or anyone connected with the Board informed him about it. We therefore conclude that appellant neither consented to the use of his arrest record as provided for in section 1000.5, nor waived the application of this section by signing the stipulation. As our Supreme Court aptly observed in *Roberts* v. *Superior Court, supra,* 9 Cal.3d at page 343: "The waiver of an important right must be a voluntary and knowing act done with sufficient awareness of the relevant circumstances and likely consequences."

## II

### VOID DECISION

"It is settled principle that administrative agencies have only such powers as have been conferred upon them, expressly or by implication, by

constitution or statute." (*Ferdig* v. *State Personnel Bd.* (1969) 71 Cal.2d 96, 103 [77 Cal.Rptr. 224, 453 P.2d 728].) ■ An administrative agency, therefore, must act within the powers conferred upon it by law and may not validly act in excess of such powers. (*Id.,* at p. 104.) When an administrative agency acts in excess of the powers conferred upon it, its action is void. (*Aylward* v. *State Board etc. Examiners* (1948) 31 Cal.2d 833, 839 [192 P.2d 929]; *Graves* v. *Commission on Professional Competence* (1976) 63 Cal.App.3d 970, 976 [134 Cal.Rptr. 71].) ■ Mandate will lie to compel it to nullify or rescind the void acts. (*Ibid.*)

■ In the present case, the Board admittedly initiated disciplinary proceedings against appellant some seven months after he had successfully completed the diversion program. Also, the Board used, without the consent of appellant, information from his arrest record as the sole basis for such proceedings. Such use, as we previously determined, is prohibited by section 1000.5. Thus, the Board exceeded its power by such use, making its decision void. We conclude, therefore, that the superior court should have granted the petition insofar as it sought a writ of mandate compelling the Board to set aside the decision revoking appellant's certificate.

## CONCLUSION

Accordingly, the judgment is reversed. The trial court is directed to grant the petition of appellant insofar as it seeks a writ of mandate, compelling the Board to set aside its order of December 16, 1980, adopting the terms of the stipulation as its decision and making such decision effective January 16, 1981. The trial court is also directed to conduct further proceedings on whether appellant is entitled to attorney fees as provided for in Government Code section 800 and as prayed for in his petition. Each party shall bear its own costs on appeal.

Lillie, P. J., and Johnson, J., concurred.