TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 95-311 |
| of | : | |
| | : | July 25, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE QUENTIN L. KOPP, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

May the legislative body of a local agency prohibit members of the public, who speak during the time permitted on the agenda for public expression, from commenting on matters that are not within the subject matter jurisdiction of the legislative body?

CONCLUSION

The legislative body of a local agency may prohibit members of the public, who speak during the time permitted on the agenda for public expression, from commenting on matters that are not within the subject matter jurisdiction of the legislative body.

ANALYSIS

The Ralph M. Brown Act (Gov. Code, §§ 54950-54962; "Act")[1] generally provides that the legislative body of a local agency must hold its meetings open to the public except as expressly provided in the Act. Section 54954.2 requires that "[a]t least 72 hours before a regular meeting, the legislative body . . . shall post an agenda containing a brief description of each item of business to be transacted." Our focus herein is on section 54954.3, which states:

---

[1]All section references are to the Government Code unless otherwise indicated.

"(a)  Every agenda for regular meetings shall provide an opportunity for members of the public to directly address the legislative body on any item of interest to the public, before or during the legislative body's consideration of the item, *that is within the subject matter jurisdiction of the legislative body*, provided that no action shall be taken on any item not appearing on the agenda unless the action is otherwise authorized by subdivision (b) of section 54954.2.  However, the agenda need not provide an opportunity for members of the public to address the legislative body on any item that has already been considered by a committee, composed exclusively of members of the legislative body, at a public meeting wherein all interested members of the public were afforded the opportunity to address the committee on the item, before or during the committee's consideration of the item, unless the item has been substantially changed since the committee heard the item, as determined by the legislative body.  Every notice for a special meeting shall provide an opportunity for members of the public to directly address the legislative body concerning any item that has been described in the notice for the meeting before or during consideration of that item.

"(b)  The legislative body of a local agency may adopt reasonable regulations to ensure that the intent of subdivision (a) is carried out, including, but not limited to, regulations limiting the total amount of time allocated for public testimony on particular issues and for each individual speaker.

"(c)  The legislative body of a local agency shall not prohibit public criticism of the policies, procedures, programs, or services of the agency, or of the acts or omissions of the legislative body.  Nothing in this subdivision shall confer any privilege or protection for expression beyond that otherwise provided by law."  (Italics added.)

We are asked whether the legislative body of a local agency may prohibit members of the public from commenting on matters which are not within the subject matter jurisdiction of the legislative body. We conclude that it may do so.

In interpreting the language of section 54954.3, we find that several rules of statutory construction are relevant.  "When interpreting a statute our primary task is to determine the Legislature's intent.  [Citation.]  In doing so we turn first to the statutory language, since the words the Legislature chose are the best indication of its intent.  [Citation.]"  (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826.)  "`[W]hen statutory language is . . . clear and unambiguous there is no need for construction. . . .'"  (*Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 73.)  A "court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed."  (*Seaboard Acceptance Corp.* v. *Shay* (1931) 214 Cal. 361, 365.) "The sweep of a statute should not be enlarged by insertion of language which the Legislature has overtly left out.  [Citation.]"  (*People* v. *Brannon* (1973) 32 Cal.App.3d 971, 977; see also *Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1097.)

Subdivision (a) of section 54954.3 allows public comment at an agency's meetings, but only with reference to "any item of interest to the public . . . that is within the subject matter jurisdiction of the legislative body." Under subdivision (b) of the statute, the legislative body is authorized to adopt regulations, including ones which may limit the time to be spent on particular issues or which may limit the time for each speaker. (See 75 Ops.Cal.Atty.Gen. 89 (1992).) Under subdivision (c), the legislative body is restrained from prohibiting certain specified public criticism.

The legislative intent in enacting section 54954.3, subdivision (a) appears clear and unambiguous--public comment is to be allowed only on matters that are "within the subject matter jurisdiction of the legislative body." The statute does not grant the public the right to comment on matters outside the legislative body's subject matter jurisdiction. To conclude otherwise would require us to change the language of section 54954.3 to, for example, "within or without the subject matter jurisdiction of the legislative body."[2] Since a legislative body may only act within its subject matter jurisdiction (see *Brooks* v. *State Personnel Bd.* (1990) 222 Cal.App.3d 1068, 1072; *B.W.* v. *Board of Medical Quality Assurance* (1985) 169 Cal.App.3d 219, 233-234), it is entirely appropriate to limit public discussion to such matters that serve the purposes of the legislative body in holding meetings.

Such determination, however, does not end our inquiry. We believe that the language of section 54954.3 must be examined in light of the freedom of speech provisions of the federal and state Constitutions. The First Amendment to the United States Constitution provides:

> "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."

Subdivision (a) of section 2 of article I of the California Constitution states:

> "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

Section 3 of the same article provides:

> "The people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good."

In 75 Ops.Cal.Atty.Gen. 232 (1992) we were asked whether a school board could prohibit election campaigning at a school that had been designated as a polling place. We set forth the governing principles concerning the public's constitutional rights as follows:

---

[2] This request for our opinion was prompted by the refusal of a legislative body to permit public comment regarding the personal life of one of its members--a matter outside the subject matter jurisdiction of the legislative body.

"1.  Federal Constitutional Considerations

"The basic issue for resolution herein is what rights the public may have to exercise political speech on a specific type of public property, that is, school property. In *Perry Ed.Assn.* v. *Perry Local Educator's Assn.* (1983) 460 U.S. 37, 45-46, the United States Supreme Court set forth the following rules regarding the right of free speech on public property:

"`In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the State to limit expressive activity are sharply circumscribed. At one end of the spectrum are streets and parks which "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." [Citation.]  In these quintessential public forums, the government may not prohibit all communicative activity.  For the State to enforce a content-based exclusion it must show that its interest is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.  [Citation.]  The State may also enforce regulations of the time, place and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.  [Citations.]

"`A second category consists of public property which the State has opened for use by the public as a place for expressive activity.  The Constitution forbids a State to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place.  [Citations.]  Although a State is not required to indefinitely retain the open character of the facility, as long as it does so it is bound by the same standards as apply in a traditional public forum.  Reasonable time, place, and manner regulations are permissible, and a content-based prohibition must be narrowly drawn to effectuate a compelling state interest.  [Citation.]

"`Public property which is not by tradition or designation a forum for public communication is governed by different standards.  We have recognized that the "First Amendment does not guarantee access to property simply because it is owned or controlled by the government." [Citation.]  In addition to time, place, and manner regulations, the State may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view. [Citation.]  As we have stated on several occasions, "`[t]he State, no less than a private owner of property, has power to preserve the property under its control for the use of which it is lawfully dedicated.'"  [Citations.]'

"........................................................

"2.  California Constitutional Considerations

"As noted at the outset, California courts have construed the California Constitution as being more protective of a person's right of expression than the federal Constitution. An examination of recent California cases, however, discloses that California courts have adopted the general `public forum' concepts enunciated in *Perry* as an analytical framework. (See *Sands* v. *Morongo Unified School Dist.* (1991) 53 Cal.3d 863, 912, fn.4; *Chino Feminist Women's Health Center* v. *Scully* (1989) 208 Cal.App.3d 230, 243-248.)" (*Id.*, at pp. 235-238; see *Clark* v. *Burleigh* (1992) 4 Cal.4th 474, 482-496.)

In *White* v. *City of Norwalk* (9th Cir. 1990) 900 F.2d 1421, the Ninth Circuit recently applied these principles to a city council's refusal to allow public comment regarding a personal matter involving a city official. The court stated in part:

"A more fundamental flaw in plaintiffs' position is that their first amendment arguments do not take account of the nature of the process that this ordinance is designed to govern. We are dealing not with words uttered on the street to anyone who chooses or chances to listen; we are dealing with meetings of the Norwalk City Council, and with speech that is addressed to that Council. Principles that apply to random discourse may not be transferred without adjustment to this more structured situation.

"City Council meetings like Norwalk's where the public is afforded the opportunity to address the Council, are the focus of highly important individual and governmental interests. Citizens have an enormous first amendment interest in directing speech about public issues to those who govern their city. *It is doubtless partly for this reason that such meetings, once opened, have been regarded as public forums, albeit limited ones*. See *Madison School Dist.* v. *Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 175, 97 S.Ct. 421, 426, 50 L.Ed.2d 376 (1976); *Hickory Fire Fighters Ass'n, Local 2653* v. *City of Hickory*, 656 F.2d 917, 922 (4th Cir.1981).

"On the other hand, a City Council meeting is still just that, a governmental process with a governmental purpose. The Council has an agenda to be addressed and dealt with. Public forum or not, the usual first amendment antipathy to content-oriented control of speech cannot be imported into the Council chambers intact. In the first place, in dealing with agenda items, the Council does not violate the first amendment when it restricts public speakers to the subject at hand. *Madison School Dist.*, 429 U.S. at 175 n. 8, 97 S.Ct. at 426 n. 8; see *Cornelius* v. *NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 802, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985) (public forum may be created by government designating `place or channel of communication. . . . for the discussion of certain subjects'). While a speaker may not be stopped from speaking because the moderator disagrees with the viewpoint he is expressing, see *Perry Educ. Ass'n* v. *Perry Local Educators' Ass'n*, 460 U.S. 37, 60-61, 103 S.Ct. 948,

963, 74 L.Ed.2d 794 (1983) (Brennan, J., dissenting), it certainly may stop him if his speech becomes irrelevant or repetitious."   (*Id.*, at p. 1425, fns. omitted.)[3]

Accordingly, a city council meeting constitutes a "limited public forum" (see also *Pesek* v. *City of Brunswick* (N.D. Ohio 1992) 794 F.Supp. 768, 779-782) where the Legislature may properly limit the matters to be addressed by the public to those topics "within the subject matter jurisdiction of the legislative body," as it has done in section 54954.3 (see *Madison Sch. Dist.* v. *Wisconsin Emp. Rel. Comm'n, supra*, 429 U.S. at 175; *Cornelius* v. *NAACP Legal Defense & Ed. Fund* (1985) 473 U.S. 788, 802; *White* v. *City of Norwalk, supra*, 900 F.2d at 1425-1426).   The provisions of section 54954.3 are thus consistent with both the federal and state Constitutions.

However, we note that in adopting "reasonable regulations" pursuant to subdivision (b) of section 54954.3, the legislative body must exercise care that the regulations themselves do not violate the public's freedom of expression by being too broad or constituting a "prior restraint" on expression.  (See *White* v. *City of Norwalk, supra*, 900 F.2d at 1423-1424; see also *New York Times* v. *United States* (1971) 403 U.S. 713, 714; *Near* v. *Minnesota* (1931) 283 U.S. 697, 712-721.)

In sum, we conclude that the legislative body of a local agency may prohibit members of the public, who speak during the time permitted on the agenda for public expression, from commenting on matters that are not within the subject matter jurisdiction of the legislative body.

\* \* \* \* \*

---

[3]In *Madison Sch. Dist.* v. *Wisconsin Emp. Rel. Comm'n* (1976) 429 U.S. 167, relied upon by the Ninth Circuit, the United States Supreme Court stated:  "Plainly, public bodies may confine their meetings to specified subject matter . . . ."  (*Id.*, at p. 175, fn. 8.)