[No. H023083. Sixth Dist. Sept. 19, 2002.]

SUSAN RUSSELL MARTIN, Plaintiff and Respondent, v.
SANTA CLARA UNIFIED SCHOOL DISTRICT, Defendant and
Appellant.

## COUNSEL

Littler Mendelson and Richard M. Noack for Defendant and Appellant.

Law Offices of Peter A. Chang, Peter A. Chang, Jr., and Michelle Spencer for Plaintiff and Respondent.

## OPINION

**BAMATTRE-MANOUKIAN, Acting P. J.**—The Santa Clara Unified School District (the District) placed middle school teacher Susan Martin on compulsory leave on April 17, 1996, after she was arrested on April 9, 1996, on charges of cultivation of marijuana and possession of methamphetamine. On January 11, 1999, she was eventually referred to a diversion program and the charges against her were dismissed on August 25, 1999, after she successfully completed diversion. Education Code section 44940.5, subdivision (c),[1] provides that if an employee who has been placed on compulsory leave due to a certain type of arrest "is acquitted of the offense, or the charges against him or her are dismissed" the District must pay the employee full compensation for the time spent on compulsory leave upon the employee's return to work. On facts indistinguishable from those before us, the court in *Unzueta v. Ocean View School Dist.* (1992) 6 Cal.App.4th 1689 [8 Cal.Rptr.2d 614] (*Unzueta*) found that a dismissal following completion of diversion is a dismissal within the meaning of section 44940.5, subdivision (c), and therefore held that the reinstated teacher was entitled to backpay for the entire period of the compulsory leave of absence. Although there was a strong dissent in *Unzueta,* the majority found no compelling reason to disregard the plain meaning of the word "dismissed" in the statute. However, the court expressly invited the Legislature to amend section 44940.5, subdivision (c), to except diversion dismissals, if that reflected its intent. Ten years have passed, and the Legislature has not amended this statutory provision.

---

[1]All further unspecified statutory references are to the Education Code.

Pursuant to section 44940.5, subdivision (c), and in accordance with the *Unzueta* case, the trial court in our case granted Martin's petition for a writ of mandate and ordered the District to compensate her approximately $304,000 in backpay for the time she was on compulsory leave, less an offset of $3,400 for money actually earned during that time. The District appeals, raising the following contentions: 1) section 44940.5, subdivision (c), was not intended to apply to diversion dismissals; 2) section 44940.5, subdivision (c), as applied in these circumstances, is unconstitutional (Cal. Const., art. XVI, § 6); 3) Martin failed to use due diligence to mitigate damages during the period of her compulsory leave; and 4) Martin unreasonably delayed in bringing this action.

The Legislature has not responded to the court's invitation in *Unzueta* to amend section 44940.5, subdivision (c), to exclude diversion dismissals, and as an intermediate Court of Appeal our role in reviewing this matter is limited. We may not act as a "super-Legislature" in order to reach a result we think best. (*Unzueta, supra,* 6 Cal.App.4th at p. 1698.) Therefore, consistent with *Unzueta*, we conclude that the diversion dismissal in this case falls within section 44940.5, subdivision (c). On the District's remaining claims, we find that the application of the reimbursement provision of this statute to the diversion dismissal here is not an unconstitutional gift of public funds, and we further find that Martin did not unreasonably delay in filing her action. However, on the issue of mitigation, we find that Martin had a duty to mitigate damages by exercising reasonable diligence in seeking comparable employment during the period of her suspension when comparable employment was available. The record in this case does not support a finding that she made any effort to seek comparable employment. The District is therefore entitled to a reduction of damages in an amount representing what Martin could have earned in comparable employment. We therefore reverse the judgment and remand the matter for further proceedings to recalculate the amount of mitigated damages.

## BACKGROUND

On April 9, 1996, middle school science teacher Susan Martin was taken into custody pursuant to an arrest warrant charging her with felony violations of Health and Safety Code sections 11358 (marijuana cultivation) and 11377, subdivision (a) (possession of methamphetamine). The investigation report indicates the presence of a "fairly sophisticated marijuana cultivation and cloning operation" located in the upstairs bedroom closets of the Martin home. In addition, a small amount of methamphetamine was found in the Martins' bedroom closet on the ground floor. Following the arrest, the arresting officer notified the superintendent of the District.

Section 44940, subdivision (b), lists various offenses involving controlled substances as " 'optional leave of absence offense[s].' "[2] Subdivision (e) of section 44940 provides that when a certificated employee of a school district is charged with an " 'optional leave of absence offense,' " the district "may immediately place the employee upon compulsory leave." Pursuant to this section, on April 17, 1996, the District placed Martin on an unpaid leave of absence for the duration of the criminal proceedings.

The California Commission on Teacher Credentialing (Commission) initially suspended Martin's teaching credential, effective May 1, 1996. However, upon reviewing this action, the Commission determined that the charges against Martin were " 'optional leave of absence offense[s]' " under section 44940, subdivision (b), rather than " 'mandatory leave of absence offense[s]' " under subdivision (a) of the statute. A mandatory leave of absence offense would result in an automatic suspension of the teaching credential (§ 44940, subd. (d)), whereas an optional leave of absence did not. The Commission therefore ordered Martin's teaching credential reinstated retroactive to May 1, 1996.

The prosecution of Martin's case was delayed for several years. Eventually, on January 11, 1999, she was referred to a drug diversion program under former Penal Code sections 1000-1000.5. The applicable version of the diversion statute did not require that defendant enter a guilty plea.[3] Martin completed the diversion program in August of 1999, and the charges against her were dismissed pursuant to former Penal Code section 1000.3 by an order of the court filed August 25, 1999. The Commission informed Martin on December 20, 1999, that due to her successful completion of the diversion program, it determined no further review of her file was necessary.

On December 7, 1999, Martin made demand on the District to reinstate her to her former employment status and to recompense her for all backpay and benefits accrued during her unpaid leave of absence, pursuant to section

[2]Section 44940, subdivision (b), provides: "For purposes of this section, 'charged with an optional leave of absence offense' is defined to mean a charge by complaint, information, or indictment filed in a court of competent jurisdiction with the commission of any controlled substance offense as defined in Section 44011 or 87011, or a violation or attempted violation of Section 187 of the Penal Code, or Sections 11357 to 11361,' inclusive, section 11363, 11364, or 11370.1 of the Health and Safety Code, insofar as these sections relate to any controlled substances except marijuana, mescaline, peyote, or tetrahydrocannabinols."

[3]Martin's case involved a pre-1997 offense. Effective January 1, 1997, the diversion statute was amended to provide that the court may grant deferred entry of judgment as to first time drug offenders only if defendant "pleads guilty to each such charge." (Pen. Code, § 1000.1, subd. (a)(3); Stats. 1996, ch. 1132, § 3.) We express no opinion as to whether a dismissal under the amended statute, because of the guilty plea, should be treated differently under the Education Code.

44940.5. Subdivision (c) of that section provides that "if the employee is acquitted of the offense, or the charges against him or her are dismissed, the school district shall pay to the employee his or her full compensation for the period of the compulsory leave of absence upon his or her return to service in the school district."

The District rejected Martin's request and on August 8, 2000, she filed her petition for a writ of mandamus seeking to compel the District to comply with section 44940.5, subdivision (c). The District answered and at the same time filed a demurrer. The demurrer was overruled on September 26, 2000. The court found the District had failed to show cause why Martin should not be immediately reinstated to her position as a teacher in the Santa Clara County Unified School District, and the court therefore granted her petition for a writ of mandate as to the issue of her reinstatement. The court continued the matter for 90 days on the issue of backpay so that the parties could submit evidence of the amount of backpay owed and the amount of offset for other income earned by Martin during her statutory leave of absence.

The District brought a motion to reduce backpay for failure to mitigate, and the parties submitted further briefing and evidence. The District calculated what Martin would have earned from the date of her arrest, April 9, 1996, to the date of the scheduled hearing, February 22, 2001. This amount was $304,679. There was evidence that Martin had earned approximately $3,400 during this time, including $1,700 received for selling her art work, consisting of spore prints from wild mushrooms, and an approximately equal amount in traded services. In addition, the District introduced evidence that Martin had a valid teaching certificate throughout the period of her suspension, that teaching jobs were available and in fact teachers were in great demand, and that she made no effort to secure comparable employment.

On March 15, 2001, the court heard the continued matter and on March 19, 2001, the court denied the District's motion and issued a writ of mandate ordering Martin's reinstatement and further directing that the District pay her all backpay from April 9, 1996, totaling $304,679, reduced only by $3,400 for amounts actually earned by Martin. The court further ordered the District to pay Martin $393.27 per teaching day beginning March 15, 2001, until she is reinstated and receiving regular pay. Judgment was entered April 2, 2001.

ISSUES

The District argues on appeal that section 44940.5, subdivision (c),[4] was not intended to apply to a dismissal following a diversion, since such a dismissal is not based on the merits and does not reflect exoneration. Thus, the application of section 44940.5 in these circumstances to compensate Martin for all of her backpay does not further the policy behind the statute, which is to make whole an employee who has been wrongly accused. The District argues further that section 44940.5, subdivision (c), is unconstitutional as applied here because it constitutes a pledge of the District's credit, or an unauthorized gift of public funds. (Cal. Const., art. XVI, § 6.) Next the District argues that if an award of backpay is authorized under section 44940.5, subdivision (c), Martin did not mitigate her damages and thus the court erred by failing to reduce the award by amounts she could have earned had she exercised reasonable diligence. Finally, the District argues that Martin's petition for a writ of mandate was barred by laches, as she did not file it until almost a year after the charges against her were dismissed.

*Standard of Review*

■ The interpretation and applicability of a statute present questions of law and thus warrant our independent review. (*Lazar v. Hertz Co.* (1999) 69 Cal.App.4th 1494, 1504 [82 Cal.Rptr.2d 368].) ■ However, the further questions in the case, whether Martin mitigated damages and whether her action was barred by the doctrine of laches, are governed by a substantial evidence review. (*California School Employees Assn. v. Personnel Commission* (1973) 30 Cal.App.3d 241, 249-250 [106 Cal.Rptr. 283]; *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 67 [99 Cal.Rptr.2d 316, 5 P.3d 874].)

*Education Code Section 44940.5 as Applied to a Drug Diversion Dismissal*

■ We are not the first court to address the issue whether the reinstatement and reimbursement provisions in section 44940.5, subdivision (c), apply when the charges against the teacher are dismissed pursuant to the drug diversion statute. In *Unzueta, supra,* 6 Cal.App.4th 1689, the court found that a diversion dismissal was within the purview of section 44940.5, subdivision (c). In *Unzueta,* as in our case, the teacher was charged with an

---

[4]Section 44940.5 provides: "Any certificated employee placed on compulsory leave of absence pursuant to Section 44940 . . . shall be subject to the following procedures: [¶] . . . [¶] (c) . . . [I]f the employee is acquitted of the offense, or the charges against him or her are dismissed, the school district shall pay to the employee his or her full compensation for the period of the compulsory leave of absence upon his or her return to service in the school district."

" 'optional leave of absence offense' " within the meaning of section 44940, subdivision (b), namely possession and use of cocaine. Pursuant to section 44940, subdivision (e), the school district placed him on compulsory leave. He completed a diversion program and the charges against him were dismissed under former Penal Code section 1000.3. After resuming employment, he filed a petition for a writ of mandate under section 44940.5, subdivision (c), requesting backpay for approximately two years because the charges against him had been "dismissed." The trial court granted the petition. On appeal, a majority of the court found that under section 44940.5, subdivision (c), the teacher was entitled to backpay for the period of time during which he had been suspended and was completing diversion. But the court remanded the matter to determine an offset for amounts actually earned by the teacher during the relevant time.

The majority in *Unzueta* acknowledged that section 44940.5, subdivision (c), carries a connotation that the school district subject to its provisions has unlawfully or erroneously suspended a teacher who is later found to be innocent of the charges. The court nonetheless concluded that the statute did not on its face distinguish between different types of dismissals. Whether the defendant is dismissed pursuant to Penal Code section 1000.3, or pursuant to Penal Code section 1385, or after a trial on the merits, the court found that "[a] dismissal is a dismissal" for purposes of section 44940.5. (*Unzueta, supra,* 6 Cal.App.4th at p. 1695.)

The court reasoned that the diversion statute and section 44940.5 must be construed together and harmonized if possible. The court stressed that former Penal Code section 1000.5 (now Pen. Code, § 1000.4)[5] provided that after diversion is successfully completed, "*the arrest* upon which the diversion was based *shall be deemed to have never occurred.*" (*Unzueta, supra,* 6 Cal.App.4th at p. 1694.) Furthermore, the record pertaining to such an arrest " '*shall not . . . be used in any way which could result in the denial of any* employment, *benefit,* license, or certificate.' " (*Ibid.,* italics added by *Unzueta.*) The court found this language " 'indicative of an intent by the Legislature that the protection of section 1000.5 be given the broadest application.' " (*Id.* at p. 1696; *B.W. v. Board of Medical Quality Assurance* (1985) 169 Cal.App.3d 219, 232 [215 Cal.Rptr. 130].) "Given the language of Education Code section 44940.5, subdivision (c), it would be inappropriate for the judiciary to preclude backpay based upon an event which is '. . . deemed to have never occurred.' Moreover, the District may not use the record of the arrest to deprive [the teacher] of the 'benefit' afforded pursuant to Penal Code section 1000.5." (*Unzueta, supra,* 6 Cal.App.4th at p. 1696.)

---

[5]Penal Code section 1000.5 was amended and renumbered as Penal Code section 1000.4 (see Stats. 1996, ch. 1132, § 6.5).

The court declined to interpret the language of section 44940.5 to exclude a dismissal pursuant to the diversion statute; however, it invited the Legislature to amend section 44940.5 if it had intended such a result. No changes were made in the statute in response to this invitation.

In a dissent in *Unzueta*, Justice Gilbert found that the result reached by the majority not only did not further the purposes of the statutes but also defied common sense. He wrote that "it would be absurd and unjust to allow Unzueta to recover backpay. . . The purpose behind Education Code section 44940.5 is to protect students from teachers who have committed certain offenses. The purpose behind the drug diversion statute is to rehabilitate first-time drug offenders and to spare them the stigma of a criminal record. [Citations.] Penal Code section 1000 and Education Code section 44940.5 were not designed to provide teachers with an additional reward of backpay for the time spent on a drug diversion program." (*Unzueta, supra,* 6 Cal.App.4th at pp. 1703-1704 (dis. opn. of Gilbert, J.).) In Justice Gilbert's view, section 44940.5, subdivision (c), was intended only to make whole a teacher who is suspended for certain criminal charges but who is later found to be innocent. A dismissal pursuant to the diversion statute does not carry with it the presumption of innocence. He concluded that a literal reading of section 44940.5 to include diversion dismissals created a result "contrary to public policy, contrary to legislative intent, . . . and contrary to our shared notions of justice." (*Unzueta,* at p. 1705.)

On appeal here the District endorses the reasoning of Justice Gilbert's dissent in *Unzueta*. The District further argues that *Unzueta* is both factually distinguishable and wrongly decided. The District would distinguish *Unzueta* factually in that the criminal proceedings in *Unzueta* did not keep the teacher out of the classroom as long as those in our case, and consequently the backpay in *Unzueta* was considerably less than the over $300,000 awarded here. Unzueta's prosecution and diversion was completed within two years and his backpay was only $40,000, which the court ordered must be offset by approximately $30,000 he earned during that time. Martin, on the other hand, was charged in April of 1996 and did not complete diversion until August of 1999. Her lawsuit was not brought until August of 2000, over four years after she had been suspended. While these quantitative differences tend to make a more compelling argument, they are nonetheless only differences of degree. *Unzueta* and our case are not so factually dissimilar as to justify a different interpretation of the legal effect of the statutes.

The District contends that the majority in *Unzueta,* by adhering to a literal interpretation of section 44940.5, subdivision (c), failed to give effect to the purpose of the statute. This was essentially the position taken by Justice

Gilbert in his dissent. "We must not," he wrote, "be slaves to the tyranny of literalness so that we construe a statute in a way that yields 'a grotesque caricature of the Legislature's purpose.'" (*Unzueta, supra,* 6 Cal.App.4th at p. 1703 (dis. opn. of Gilbert, J.).) The majority in *Unzueta* rejected the notion that reinstating a teacher who has completed diversion and compensating that teacher for the duration of the criminal proceedings could not have been the purpose of the Legislature in section 44940.5. "The legislative reward for successful completion of diversion is dismissal of the criminal charge and rehabilitation of the experimental drug user by returning him to productive citizenship. When the successful divertee is a school teacher, an otherwise competent teacher is saved and backpay for time of suspension is given. Can we say, as a matter of law, that the Legislature did not intend this latter consequence given the language of Education Code section 44940.5, subdivision (c)?" (*Unzueta,* at p. 1696.) The majority concluded there was no compelling reason not to accept the plain meaning of the words of the statute.

The Legislature, as the majority in *Unzueta* pointed out, could have specifically excluded diversion dismissals from the reach of section 44940.5, subdivision (c). The current version of section 44940.5 was enacted in 1980, years after the Legislature enacted the diversion statute in 1972. "If the Legislature had desired to preclude backpay for those who obtain dismissals through diversion, it could simply have said so." (*Unzueta, supra,* 6 Cal.App.4th at p. 1698.) Furthermore, in 1992 the court in *Unzueta* expressly invited the Legislature to amend the statute to except diversion dismissals if it so intended, and it did not do so.

■ As an intermediate court of review, "'[o]ur function is not to judge the wisdom of statutes.'" (*Unzueta, supra,* 6 Cal.App.4th at p. 1700; *Wells Fargo Bank v. Superior Court* (1991) 53 Cal.3d 1082, 1099 [282 Cal.Rptr. 841, 811 P.2d 1025].) We may not act as "a super-Legislature," nor are we free "to enforce what we think best." (*Unzueta, supra,* at pp. 1698, 1700.) ■ While we share some of the concerns expressed in the dissent in *Unzueta,* we find no principled basis to distinguish that case from ours. The Legislature in section 44940.5, subdivision (c), provided a remedy to teachers where charges against them have been "dismissed." It has seen fit not to qualify this language. We therefore conclude, consistent with *Unzueta,* that the diversion dismissal in this case is a dismissal within the meaning of section 44940.5, subdivision (c).

*Constitutionality of Section 44940.5*

■ The District contends that the court in *Unzueta* did not consider or decide the further argument raised here that an award of backpay under

section 44940.5, subdivision (c), constitutes an unconstitutional pledge of the District's credit or in the alternative a gift of public funds. The constitutional provision relied on is article XVI, section 6 of the California Constitution, which provides: "The Legislature shall have no power to give or to lend, or to authorize the giving or lending, of the credit of the State, or of any county, city and county, city, township or other political corporation or subdivision of the State . . . or to pledge the credit thereof, in any manner whatever, for the payment of the liabilities of any individual, association, municipal or other corporation whatever . . . ." A school district is considered to be "a political subdivision of the State" within the meaning of article XVI. (*Hall v. City of Taft* (1956) 47 Cal.2d 177, 181 [302 P.2d 574].) Article XVI, section 6 goes on to provide ". . . nor shall [the Legislature] have power to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever . . . ."

The District argues that the first part of California Constitution, article XVI, section 6 prohibits the Legislature from pledging the District's credit by requiring the District to pay for a future unknown obligation created by the state, namely the obligation under section 44940.5 to award undetermined amounts of backpay to a reinstated teacher. The District complains that it has no way of anticipating such an obligation and no means of controlling the amount of the expenditure. This would be true, however, in any case of the application of section 44940.5, subdivision (c), to any acquittal or dismissal, and does not render the statute unconstitutional when specifically applied to diversion dismissals.

In regard to the second part of California Constitution, article XVI, section 6, which prohibits a gift of public funds, the District argues that all expenditures of public funds must have a public purpose. (*White v. State of California* (2001) 88 Cal.App.4th 298, 311 [105 Cal.Rptr.2d 714].) The District's position is that the application of section 44940.5, subdivision (c), in the circumstances here "manifestly lacks a public purpose" since the only possible purpose of the statute is to make whole a person who has been wrongly charged and suspended. That purpose is not served here because Martin was not exonerated and her suspension was not wrongful. Furthermore, the District was obliged to pay another teacher to fill Martin's position during the entire time she was suspended. Therefore, applying section 44940.5, subdivision (c), to require that the District pay out over $300,000 for which it received no services furthers no conceivable purpose and is an unconstitutional gift of public funds.

Few courts have interpreted California Constitution, article XVI, section 6, and consequently no precedent exists to aid us in determining whether the

application of section 44940.5, subdivision (c), to a diversion dismissal is unconstitutional. Ordinarily legislative enactments are presumed to be valid. (*Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 780 [35 Cal.Rptr.2d 814, 884 P.2d 645].) As a general rule statutes should be construed, if reasonably possible, to avoid finding they are unconstitutional. (*Tuffli v. Governing Board* (1994) 30 Cal.App.4th 1398, 1404 [36 Cal.Rptr.2d 433].) Furthermore, it appears that the District's constitutionality arguments rest upon the premise that section 44940.5, subdivision (c), could not have been intended to be applied to diversion dismissals and thus that its application in these circumstances serves no public purpose. These claims were discussed above, however, where we concluded that *Unzueta* provided pertinent legal precedent. That court found it was not unreasonable or absurd for the Legislature to have intended section 44940.5, subdivision (c), to apply to diversion dismissals:

As the District concedes, the question whether an expenditure has a public purpose is within the discretion of the Legislature. "[I]ts discretion will not be disturbed by the courts so long as that determination has a reasonable basis." (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 746 [97 Cal.Rptr. 385, 488 P.2d 953].) We cannot find as a matter of law that section 44940.5 as applied to diversion dismissals is devoid of a legislative purpose. We therefore conclude that it is not unconstitutional.[6]

*Mitigation*

The District argues that Martin had a duty to mitigate damages and that her failure to do so requires that any award be reduced by amounts she could have earned during the time she was suspended. The *Unzueta* case provides some guidance on the issue of mitigation. That court found that even though section 44940.5, subdivision (c), authorizes "full compensation" and does not expressly provide for any offset, general principals of law dictate that the obligation to reimburse the teacher for the amount of salary wrongfully withheld may be offset by deducting earnings from other employment. (*Unzueta, supra,* 6 Cal.App.4th at pp. 1700-1701; *California School Employees Assn. v. Personnel Commission, supra,* 30 Cal.App.3d 241.) Thus, while the school district must make a teacher whole who has been suspended due to criminal charges later dismissed, it need not make the teacher "more than whole." (*Unzueta, supra,* at p. 1701.)

Since Unzueta did mitigate his damages, earning approximately $30,000 at other employment during the time of his suspension, the court in *Unzueta*

---

[6]We note that the state may be required to reimburse the District for compensation paid under section 44940.5, subdivision (c), if this is determined by the Commission on State Mandates to be "costs mandated by the state." (Gov. Code, § 17514; Cal. Const., art. XIII B, § 6.)

did not discuss the nature of the duty to mitigate. It simply found that money actually earned could be deducted from backpay owed. Our case presents the question not reached in *Unzueta*: where a teacher has been placed on compulsory leave due to charges that fall within section 44940, what is that teacher's duty to mitigate damages arising to the school district in the event of a subsequent acquittal or dismissal of the charges?

 In the context of wrongful termination, the general rule is that a public employee who is wrongfully discharged has a duty to exercise due diligence to mitigate damages while pursuing remedies against the employer. (*California School Employees Assn. v. Personnel Commission, supra,* 30 Cal.App.3d 241.) The exercise of due diligence includes the duty to look for comparable employment. (*Stanchfield v. Hamer Toyota, Inc.* (1995) 37 Cal.App.4th 1495, 1501 [44 Cal.Rptr.2d 565].) The employer has the burden to show mitigation, i.e., what the employee has earned or with reasonable diligence might have earned from other employment. (*California School Employees Assn.,* at p. 249.) "However, before projected earnings from other employment opportunities not sought or accepted by the discharged employee can be applied in mitigation, the employer must show that the other employment was comparable, or substantially similar, to that of which the employee has been deprived; the employee's rejection of or failure to seek other available employment of a different or inferior kind may not be resorted to in order to mitigate damages." (*Parker v. Twentieth Century-Fox Film Corp.* (1970) 3 Cal.3d 176, 182 [89 Cal.Rptr. 737, 474 P.2d 689, 44 A.L.R.3d 615].) We believe these rules apply here, even though this was a case of statutory suspension rather than wrongful termination.

The trial court, guided by *Unzueta,* ordered that the award of backpay to Martin be reduced by $3,400. This represented what the District could show she actually earned, by means other than teaching, during her suspension. The trial court made no findings regarding her duty to mitigate. However, because the trial court denied the District's motion to reduce backpay for failure to mitigate, we must presume that the court impliedly found that Martin exercised reasonable diligence under all of the circumstances to obtain comparable employment. Such a finding is unsupported by any evidence.

The District introduced evidence that although Martin's teaching credential was initially suspended on May 1, 1996, following her arrest, it was reinstated on August 28, 1996, retroactive to May 1, 1996. The District concedes that she could not have gotten a new job for the remainder of the 1995-1996 school year, but argues that she was under a duty to seek comparable employment starting with the 1996-1997 school year. Martin

confirmed in her deposition that she possessed a valid teaching credential throughout the duration of her suspension. However, she made no efforts whatsoever, either through formal job applications or informal inquiries, to obtain a teaching job in a public or private school during three and a half years from the beginning of her suspension until she applied for reinstatement with the District. She explained that she "just assumed" that she was unhireable, although no employer had told her so. Martin conceded she was aware that there was a critical shortage of teachers in California during this time and that there were jobs available for qualified science teachers. Butch Pastorini, assistant superintendent of the school district, submitted a declaration indicating that during the school years 1996-1997, 1997-1998, 1998-1999, 1999-2000 and 2000-2001, there were numerous middle school science teacher positions available in various school districts throughout the county.

The District contends that this showing established the necessary predicate for finding a failure to mitigate: comparable employment was available; Martin was aware of this; her credential was valid; and she failed to make any effort to obtain such employment. In response, Martin argues that any such efforts would have been futile under the circumstances because she would not have been hired due to the pending charges against her. In support of this argument, she submitted a blank application form from the public school system showing that any applicant would be obliged to answer the question "Have you ever been arrested for anything other than a minor traffic violation?" She also submitted a letter, dated August 2000, after this lawsuit was filed, showing that any new hires at the Lakeside Joint School District would be required to be fingerprinted. As to the application form, there was nothing to authenticate it as the current standard public school application form. Furthermore, there was no evidence that Martin ever filled out or even saw this employment application form during the time of her suspension. In fact she testified that she never obtained any applications. As to the letter from Lakeside School District, there is no evidence that Martin made any inquiry regarding employment at this school district during her suspension, or at any other school district in the area. The letter from the Lakeside Joint School District was not addressed to her. This documentary evidence is therefore not substantial evidence to show her exercise of due diligence to mitigate, or that such efforts would have been futile.

Furthermore, the school district application form submitted into evidence provides that if the applicant answers affirmatively to the question regarding a prior arrest, the applicant is entitled to submit an explanation of the circumstances. Martin has maintained her innocence of the charges throughout the proceedings and her attorney contends that the delay in prosecution

reflected the district attorney's unwillingness to prosecute a losing case. She was entitled to explain all of these circumstances to any prospective employer. As the District points out, Labor Code section 432.7 provides that a public or private employer may not utilize, as a factor in determining hiring, any arrest not resulting in conviction, or any record regarding participating in a diversion program. Martin had a valid teaching credential and an otherwise unblemished career of 29 years of teaching. Qualified teachers were in high demand during the relevant time. On this record, Martin's explanation that "I just assumed I was unhireable" is not substantial evidence to show reasonable diligence or that efforts to mitigate would have been futile.

In *California School Employees Assn. v. Personnel Commission, supra,* 30 Cal.App.3d at page 250, the court found as to a wrongfully discharged employee that although comparable jobs were available at other school districts in the area, "petitioner made no effort whatsoever to obtain similar employment since her dismissal." Therefore "projected earnings from such employment possibilities could be applied by the employer in mitigation." (*Id.* at p. 255.) The school district in that case was entitled to deduct from compensation for backpay an amount representing what the employee "*with reasonable diligence might have earned from other employment.*" (*Id.* at pp. 249-250, italics in original.) We reach the same conclusion here. The District submitted evidence showing the prevailing salaries for comparable positions in other school districts in the area during the pertinent years. Because Martin did not exercise due diligence in seeking comparable employment after being placed on compulsory leave, the award of backpay must be reduced by an amount she reasonably could have earned had she obtained such employment. (*Ibid.*) We therefore remand the matter so that the court can determine the appropriate amount of mitigation.

*Laches*

The District argues that the trial court should have denied Martin's writ petition on the equitable ground of laches because she failed to keep the District apprised of the status of her case and because she waited too long to bring her petition after the charges against her were dismissed.

A party asserting laches must show both unreasonable delay and prejudice resulting from the delay. (*Conti v. Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 359 [82 Cal.Rptr. 337, 461 P.2d 617].) A trial court's ruling regarding laches will be sustained if there is substantial evidence to support it. (*Johnson v. City of Loma Linda, supra,* 24 Cal.4th 61, 67 [99 Cal.Rptr.2d 316, 5 P.3d 874].) The District asserts there was

unreasonable delay in two respects: Martin's failure to notify the District when her case was referred to diversion, and her failure to bring her action until almost a year after she had completed diversion. As to the first point, we are unaware of any authority requiring a teacher under a compulsory leave of absence pursuant to section 44940 to keep the school district informed of the progress of the criminal proceedings. As to the second point, the trial court found the delay was not unreasonable, and substantial evidence supports this finding.

Martin's attorney submitted evidence of his efforts to obtain a certified copy of the dismissal from the court. When he was able to obtain this in November of 1999, he notified the District, on December 7, 1999, of Martin's demand to be reinstated and to be compensated for backpay. He sent another letter to the District in January of 2000, whereupon he was informed that the District had referred the matter to its counsel. Martin's attorney then wrote to the District's counsel in February of 2000, citing *Unzueta* as authority. No formal response was received and another letter was sent to the District's counsel in April of 2000. Informal attempts to resolve the matter over the next few months were unsuccessful and the petition was filed August 8, 2000. We find on this record that there is substantial evidence to support the trial court's implied finding that the delay was not unreasonable. Consequently there is no need to address the element of prejudice.

## DISPOSITION

The judgment is reversed. Because we find Martin had a duty to mitigate damages by seeking comparable employment while on a compulsory leave of absence pursuant to Education Code section 44940, subdivision (e), and because we find no evidence of reasonable diligence to fulfill this duty, the District is entitled to a reduction in damages for backpay by an amount representing what Martin could have earned from comparable employment during the period of her suspension when comparable employment was available. The trial court may take further evidence and may make such further findings as may be supported thereby. The matter is therefore remanded so that the trial court may determine the appropriate amount of projected earnings to be applied in mitigation of the damages awarded. The parties are to bear their own costs on appeal.

Mihara, J., and Rushing, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 18, 2002. Moreno, J., was of the opinion that the petition should be granted.