225 Cal.App.3d 1498 (1990)
275 Cal. Rptr. 702
JOSEPH N. SANDOVAL, Plaintiff and Appellant,
v.
STATE PERSONNEL BOARD, Defendant and Respondent. DARROLL WILLIAMS, Plaintiff and Appellant,
v.
STATE PERSONNEL BOARD, Defendant and Respondent.
Docket Nos. F013205, F013235.
Court of Appeals of California, Fifth District.
December 4, 1990.
*1499 COUNSEL
Young, Wooldridge, Paulden, Self, Farr & Griffin and Philip W. Ganong for Plaintiffs and Appellants. *1500 John K. Van de Kamp, Attorney General, Henry G. Ullerich and Thomas Scheerer, Deputy Attorneys General, for Defendant and Respondent.
OPINION
BEST, P.J.
These consolidated appeals present the novel issue whether petitioners are entitled to the protection of Penal Code[1] section 1000.5 when appealing their terminations as correctional officers. We conclude they are not and affirm the judgments.

FACTS AND PROCEDURAL HISTORY
Darroll Williams and Joseph Sandoval (petitioners) were correctional officers at the Tehachapi Correctional Institution. They were arrested in separate incidents after small amounts of drugs and drug paraphernalia were found in their homes. Pursuant to section 1000, both completed pretrial diversion programs, and the criminal charges were dismissed under section 1000.3.[2] While the criminal charges were pending and before either man entered diversion, they were charged with a violation of Government Code section 19572, subdivision (t), failure of good behavior outside of duty hours which causes discredit to the appointing authority or the person's employment, and were dismissed from their positions. The charges were based on the same facts which formed the basis of the criminal charges.
Williams and Sandoval appealed their dismissals and, at the administrative hearing, moved to suppress evidence relating to their arrested under section 1000.5. The administrative law judge (ALJ) denied the motion and sustained the dismissals. The California State Personnel Board adopted the proposed decision of the ALJ and upheld the dismissals. The trial court denied petitioners' request for a writ of mandate and this appeal followed.

DISCUSSION
Section 1000.5 provides:
"Any record filed with the Department of Justice shall indicate the disposition in those cases diverted pursuant to this chapter. Upon successful *1501 completion of a diversion program the arrest upon which the diversion was based shall be deemed to have never occurred. The divertee may indicate in response to any question concerning his prior criminal record that he was not arrested or diverted for such offense. A record pertaining to an arrest resulting in successful completion of a diversion program shall not, without the divertee's consent, be used in any way which could result in the denial of any employment, benefit, license, or certificate."
Only one case has construed section 1000.5 to date, B.W. v. Board of Medical Quality Assurance (1985) 169 Cal. App.3d 219 [215 Cal. Rptr. 130]. B.W., a licensed physician, was arrested for possession of cocaine. He successfully completed a diversion program at which time the criminal case against him was dismissed and his arrest record was expunged. (Id. at p. 225.) Later that year, the board placed B.W. on three years' probation based on his illegal possession of cocaine. A year later, B.W. filed a petition for termination of probation on the ground the board used information from his record of arrest as the sole basis to institute disciplinary proceedings against him in violation of section 1000.5. The board denied his request and the trial court upheld the denial, finding section 1000.5 did not apply to protect licensees from disciplinary action. (B.W., supra, at pp. 226-228.) The Court of Appeal reversed.
The court reasoned that one of the purposes of the diversion statutes was to restore the divertee to productive citizenship without the lasting stigma of a criminal conviction. Under the original diversion statutory scheme, if the defendant successfully completed the diversion program, the charges were dismissed. However, that was the extent of the protection provided, and the arrest record and ultimate disposition of the case remained available for use in the files of the Bureau of Criminal Identification and Investigation. In order to provide more protection to the successful divertee, in 1975, the Legislature enacted section 1000.5. (B.W. v. Board of Medical Quality Assurance, supra, 169 Cal. App.3d at pp. 226-228.)
The court noted the statute was remedial in nature and under well-settled rules of judicial construction was to be liberally construed to promote the objects to be accomplished by it. (B.W. v. Board of Medical Quality Assurance, supra, 169 Cal. App.3d at p. 230.) Further, the Legislature's use of the words, "shall not be used" and "in any way," in referring to the record of arrest of a successful divertee, was indicative of its intent that the protection of section 1000.5 be given the broadest application. (B.W., supra, at p. 232.) Since the board initiated disciplinary proceedings based solely on information obtained from B.W.'s record of arrest after he had completed the diversion program, he was entitled to the protections of section 1000.5. (B.W., supra, at pp. 232-233.)
*1502 This case is distinguishable from B.W. in two respects. First, the Department of Corrections dismissed petitioners before they entered diversion programs. Second, the department did not rely on the arrest record to justify petitioners' dismissals. It had the arresting officer testify regarding the events leading up to the arrest. Those procedures were sanctioned in dicta in B.W.:
"It is also equally clear that there is nothing in this section to bar an agency or other entity from properly using information in a divertee's arrest record either before or during the period of diversion.... [S]ection 1000.5 goes into effect only upon the successful completion of diversion." (B.W. v. Board of Medical Quality Assurance, supra, 169 Cal. App.3d at p. 229, italics omitted.)
"As we previously noted, it is clear that nothing in section 1000.5 prevented the Board from using information in appellant's arrest record to initiate disciplinary proceedings against him prior to his successful completion of diversion. Nor was the Board prohibited from investigating the matter to develop additional information. Had the Board initiated such proceedings prior to appellant's successful completion of diversion, based either on the information in his arrest record or on information developed from its investigation, or both, it is also clear that the Board could have compelled appellant to testify about the facts of his arrest. [Citations.]" (B.W. v. Board of Medical Quality Assurance, supra, 169 Cal. App.3d at p. 232.)
(1) Petitioners contend that to hold section 1000.5's protection does not apply to allow them to be reinstated in their positions creates disparate treatment for successful divertees. That is, if they completed diversion programs before they applied for positions with the Department of Corrections they could avoid disclosing their arrests; however, since they were dismissed prior to completing diversion programs, the facts of their arrests and the underlying offenses can be used to uphold the dismissals.
Petitioners compare their situation to one discussed in B.W. v. Board of Medical Quality Assurance, supra, 169 Cal. App.3d at pages 229-230. There, the board argued that although section 1000.5 barred it from using a successful divertee's record of arrest as a source of information in connection with his application for licensure, it should not apply to disciplinary proceedings against a successful divertee-licensee. The court rejected the contention.
"[W]e fail to see how making a distinction in the statute between successful divertee-applicants and successful divertee-licensees, as urged by the *1503 Board, would ... be in harmony with the object of the statute. Under the Board's construction of the statute, as a matter of logic and fact, the same qualitative person would be allowed to practice medicine. In one case, the Board would be taking the `keys to the safe' from a successful divertee-licensee. And, in the other case, the Board would be giving the same keys to a successful divertee-applicant.... We conclude, therefore, that the Legislature did not intend such a distinction in the application of section 1000.5." (B.W. v. Board of Medical Quality Assurance, supra, 169 Cal. App.3d at p. 230.)
That analysis does not apply in this case because petitioners are situated differently than new applicants for the same positions. If petitioners were reinstated in their jobs, arguably they would be entitled to backpay and restoration of their sick leave, vacation time and medical benefits, advantages not available to new employees.
Alternatively, if section 1000.5 is applied prospectively  from the time petitioners successfully completed the diversion programs  they will receive the benefit of their rehabilitation on job applications made after they successfully completed the diversion programs. Under the protections of section 1000.5, petitioners can deny they were ever arrested and their arrest records cannot be used to deny them employment when they apply for employment in the future.
This interpretation effectuates the purpose of the statute without penalizing the employer who dismisses an employee pursuant to employment policies and procedures before final disposition of the employee's criminal case. Prospective application of section 1000.5 also prevents a possible windfall in the form of backpay and benefits to successful divertees.
Review of the legislative history of section 1000.5 does not compel a different result. As stated before, one of the purposes of the diversion statutes was to give the first-time offender, with no prior criminal record or history of violence, an opportunity to avoid criminal prosecution by referral to appropriate treatment or educational agencies. Section 1000.5 also serves to restore the divertee to productive citizenship without the lasting stigma of a criminal conviction. (People v. Superior Court (Oh Tai Ho) (1974) 11 Cal.3d 59, 61-62 [113 Cal. Rptr. 21, 520 P.2d 405], and see letter from the State Office of Narcotics & Drug Abuse.) In other words, the statute was intended to give first-time offenders a second chance (Staff Analysis of Sen. Bill No. 714 as amended June 12, 1972) and to expunge the criminal record which accompanies offenders as a "millstone around their necks." (Governor Reagan's Message to Leg., Apr. 27, 1972; Enrolled Bill Rep. prepared for State Office of Narcotics & Drug Abuse (Sept. 19, 1975).)
*1504 Prospective application of the protections of section 1000.5 provides successful divertees with a second chance and restores them to productive citizenship. Accordingly, petitioners were not entitled to the protection of section 1000.5 when they appealed their terminations which occurred before they completed diversion programs. On appeal, petitioners' dismissals were properly reviewed on the facts which existed when the men were dismissed. The ALJ did not err in admitting evidence of petitioners' arrests and the acts which led to their arrests to justify their dismissals. Thus, the petitions were properly denied.

DISPOSITION
The judgments are affirmed with costs to respondent.
Vartabedian, J., and Brown (G.A.), J.,[*] concurred.
A petition for a rehearing was denied December 27, 1990.
NOTES
[1] All statutory references are to the Penal Code unless otherwise indicated.
[2] Section 1000 states the diversion statutes (§§ 1000-1000.5) apply to cases involving certain designated drug offenses when the accused meets six criteria including no prior drug offense convictions and the offense charged did not involve a crime of violence.

Section 1000.3 provides in pertinent part:
"If the divertee has performed satisfactorily during the period of diversion, at the end of the period of diversion, the criminal charges shall be dismissed."
[*] Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.