Filed 1/8/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MEDICAL BOARD OF CALIFORNIA,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Respondent;<br><br>BRANDON J. ERDLE,<br><br>    Real Party in Interest. | A151175<br><br>(City & County of San Francisco Super. Ct. No. CPF-16-515301) |

In this writ proceeding, we construe two statutes involving the use of arrest records to support disciplinary proceedings involving professional licensees in the healing arts. Penal Code section 1000.4 provides generally that "[a] record pertaining to an arrest resulting in successful completion of a pretrial diversion program shall not, without the defendant's consent, be used in any way that could result in the denial of any employment, benefit, license, or certificate. . . ." (Pen. Code, § 1000.4, subd. (a).)[1] In contrast, Business and Professions Code section 492 (Section 492) states as follows: "Notwithstanding any other provision of law, successful completion of any diversion program under the Penal Code . . . shall not prohibit any agency established under Division 2 (commencing with Section 500) of this code, or any initiative act referred to in that division, from taking disciplinary action against a licensee or from denying a license for professional misconduct, notwithstanding that evidence of that misconduct may be

_____

[1] All statutory references are to the Penal Code unless otherwise indicated.

1

recorded in a record pertaining to an arrest." (Bus. & Prof. Code, § 492.) Because we conclude that Section 492 creates a blanket exemption from the restrictions on the use of arrest records contained in section 1000.4 for licensing decisions made by the healing arts agencies referenced in Section 492, we grant the writ petition.

## I. BACKGROUND

After real party in interest Dr. Brandon Erdle (Dr. Erdle or doctor) was arrested in September 2013 for possession of cocaine, he entered into and, in January 2016, successfully completed drug treatment under a deferred entry of judgment program authorized by Penal Code section 1000 et seq.[2] The Medical Board of California (Medical Board), having learned of Dr. Erdle's arrest, interviewed him in November 2014 regarding the circumstances surrounding the incident. During this interview, the Medical Board's investigator referenced the arrest report that had been generated by the police in the matter. Thereafter, on April 17, 2015—prior to the doctor's successful completion of his drug program and the corresponding dismissal of his underlying criminal matter—the Medical Board filed an accusation against Dr. Erdle, alleging that his possession of cocaine constituted a violation of the drug laws and unprofessional conduct pursuant to Business and Professions Code sections 2227, 2234, and 2238 (Accusation).

At the administrative hearing on the Accusation in August 2016, the doctor argued that he could not be disciplined because the Medical Board's action was based entirely on information obtained from his arrest record, the use of which was prohibited by section 1000.4. In support of his claim, the doctor also cited *B. W. v. Board of Medical Quality Assurance* (1985) 169 Cal.App.3d 219 (*B.W.*), in which the Second Appellate District held that—after a physician had successfully completed a drug program pursuant to section 1000 et seq.—the Medical Board's predecessor was prohibited by section 1000.4

---

[2] Effective January 1, 2018, the deferred entry of judgment program authorized by section 1000 et seq. was converted into a pretrial diversion program. (Stats. 2017, ch. 778.) For the purposes of this opinion, we will cite to the current version of the statute, as the changes effected by this new legislation do not alter our analysis.

(then section 1000.5) from relying solely on information in that physician's record of arrest to institute disciplinary proceedings. (*Id.* at pp. 225, 233.) The administrative law judge (ALJ), however, noted that the Legislature had enacted Section 492 in 1987 in direct response to the holding in *B.W.* Indicating that he needed to "reconcile the two statutes," the ALJ concluded that "Section 492 permits discipline for underlying conduct even if the facts on which the agency relies are contained in an arrest report or other record pertaining to the arrest."

Nevertheless, the ALJ further determined that—based on section 1000.4—records pertaining to the arrest should not be permitted at the hearing. In addition, any portions of the doctor's prior interview with the Medical Board that directly referenced arrest records would be excluded. And, the ALJ also refused to admit the results of the confirmatory police testing that positively identified the substance in the doctor's possession as cocaine. Instead, the ALJ required the misconduct at issue to be proved by other means, including through the direct testimony of the arresting officer. In this regard, the ALJ determined that the officer would not be allowed to refresh his recollection with any arrest documents during the hearing. However, he did allow the officer to testify irrespective of whether he had refreshed his recollection with the police report prior to the hearing, opining that he had no control over what happened outside of his presence. Ultimately, the ALJ concluded—based on the evidence that was presented—that cause for discipline existed, that Dr. Erdle's physician's and surgeon's certificate should be "publically reproved," and that any subsequent reinstatement of his license should be on a probationary basis.[3]

In October 2016, Dr. Erdle filed a petition for writ of administrative mandate in the Superior Court for the City and County of San Francisco, seeking to set aside the decision of the ALJ because, among other reasons, the ALJ improperly allowed into evidence information that should have been excluded pursuant to section 1000.4. In

---

[3] At the time of the hearing, the doctor's certificate had expired, he was practicing medicine in another state, and he had no plans to return.

particular, the doctor argued that the ALJ erred in allowing the arresting officer to testify after it was established that he had refreshed his recollection with the arrest report immediately prior to the disciplinary hearing on the matter. Section 492, the doctor urged, only allows the Medical Board to pursue disciplinary proceedings based on testimonial and documentary evidence derived *entirely* from independent sources. The trial court ordered a stay of the administrative decision pending a hearing on the writ petition.

After briefing and hearing, the trial court granted Dr. Erdle's petition. Specifically, the court held that the ALJ violated section 1000.4 in admitting the police officer's testimony, stating: "There is nothing in the record to indicate that the officer had a clear recollection of his arrest of [the doctor] independent of the arrest report. An officer can testify at a medical board hearing and that testimony can be the basis for discipline. But the officer cannot read the arrest report immediately prior to the hearing to refresh his recollection and then subsequently parrot that report. Such a process violates [section 1000.4]." In adopting this position, the court rejected the argument that Section 492 creates a blanket exception to section 1000.4, concluding instead that "[t]he section clarifies that a physician can be disciplined, but the Medical Board must still rely on evidence that does not violate [section 1000.4]." Since, in the trial court's opinion, there was "no persuasive evidence that [the doctor] possessed cocaine" absent the officer's testimony, the court granted the petition and caused a peremptory writ of mandate to be issued directing the Medical Board to set aside its decision.

In response, the Medical Board filed a petition for extraordinary writ in this court, challenging the trial court's decision and requesting a stay.[4] On May 5, 2017, we issued the requested stay of the trial court proceedings pending further order. Thereafter, noting that "section 1000.4 does not prohibit a witness from refreshing his or her recollection with an arrest report prior to testifying at a Medical Board disciplinary hearing," we

---

[4] Pursuant to section 2337 of the Business and Professions Code, review of a superior court's decision revoking, suspending, or restricting a license issued by the Medical Board "shall be pursuant to a petition for an extraordinary writ."

issued an alternative writ of mandate commanding the trial court to set aside and vacate its order granting the petition for writ of administrative mandate, the judgment granting a peremptory writ of mandate, and the peremptory writ of mandate, and to reconsider its decision on this basis or show cause why it should not be compelled to do so. The trial court subsequently declined to reconsider its ruling, reportedly so that this matter of first impression could be heard and resolved by this court. Dr. Erdle having thereafter filed a written return to the alternative writ and a traverse having been filed by the Medical Board, the cause is now before us for decision.

## II. DISCUSSION

We resolve this matter through statutory interpretation, a task in which we engage independent of any determinations made by the trial court or the Medical Board. (*Rand v. Board of Psychology* (2012) 206 Cal.App.4th 565, 575 (*Rand*); see also *Szold v. Medical Bd. of California* (2005) 127 Cal.App.4th 591, 595–596 & fn. 4 (*Szold*).)[5] Under such circumstances, " ' "[w]ell-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law." [Citation.] "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context." [Citation.] If the statutory language is unambiguous, "we presume the Legislature meant what it said, and the plain meaning of the statute governs." [Citation.]' " (*Szold*, *supra*, 127 Cal.App.4th at p. 596.)

Here, it is true that section 1000.4, subdivision (a), provides that "[a] record pertaining to an arrest resulting in successful completion of a pretrial diversion program

---

[5] In this regard, we reject the doctor's suggestion that we must limit ourselves to the question of whether section 1000.4 allows for the use of arrest records to refresh recollection before testimony. The issue before us is whether the officer's testimony should have been excluded pursuant to section 1000.4 and Section 492, and our answer is necessarily based on the construction of both statutes.

shall not, without the defendant's consent, be used *in any way* that could result in the denial of any employment, benefit, license, or certificate." (Italics added.) The statute was enacted to keep these cases from " 'clogging the criminal justice system' " as well as to "permit the courts 'to identify the experimental or tentative user[s] before [they] become[] deeply involved with drugs, to show [them] the error of [their] ways by prompt exposure to educational and counseling programs in [their] own community, and to restore [them] to productive citizenship without the lasting stigma of a criminal conviction[.]' " (*B.W.*, *supra*, 169 Cal.App.3d at p. 228.) On this basis, the language of section 1000.4 has been construed to evince a legislative intent that the protection afforded by the statute "be given the broadest application." (*Id.* at p. 232; *id.* at p. 230 [noting that statute is remedial and thus should "be liberally construed to promote the objects to be accomplished by it"]; accord, *Sandoval v. State Personnel Bd.* (1990) 225 Cal.App.3d 1498, 1501 (*Sandoval*).)

However, Section 492—a more recent and more specific statute—expressly states that "*[n]otwithstanding any other provision of law*, successful completion of any diversion program under the Penal Code . . . shall not prohibit any agency established under Division 2 (commencing with Section 500) of this code, or any initiative act referred to in that division, from taking disciplinary action against a licensee or from denying a license for professional misconduct, *notwithstanding that evidence of that misconduct may be recorded in a record pertaining to an arrest*." (Bus. & Prof. Code, § 492, italics added.) The language of the statute highlighted above does not say that evidence of misconduct *may also* be contained in an arrest record, wording which might arguably support the ALJ's approach in this case. It says "may be" contained in such a record. In our view, this plain language provides a blanket exemption from the restrictions on the use of arrest records contained in section 1000.4 for licensing decisions made by the healing arts agencies referenced in Section 492, such as the Medical Board. In short, the two statutes were not meant to be reconciled as attempted by the ALJ below and argued by Dr. Erdle here. Rather, Section 492 is simply a straightforward exception to the more general statute, section 1000.4, applicable to a particular subset of divertees.

6

We believe that the legislative history underlying the enactment of Section 492 supports this construction.[6] As stated above, Section 492 was enacted in response to the *B.W.* decision. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1303 (1986–1987 Reg. Sess.) May 20, 1987, pp. 1–2 (Sen. Analysis).) The legislative history notes that, prior to *B.W.*, regulatory licensing agencies interpreted section 1000.4 (then 1000.5) "to allow disciplinary action either by 1) filing the action before the completion of the diversion program, or 2) calling witnesses to establish by direct testimony the underlying unprofessional conduct of the licensee, without reference to the arrest report." (*Id.* at p. 2.) The Legislature was apparently concerned that *B.W.* provided absolute immunity from disciplinary action once diversion had been successfully completed, even if the underlying misconduct could be established through independent evidence and the direct testimony of witnesses.[7] (*Ibid.*)

Nothing in the legislative history, however, suggests that the scope of Section 492 was intended to be limited in any way by the continued existence of section 1000.4. Rather, the bill is described as authorizing "healing arts agencies to take disciplinary action against a licensee charged with drug violations notwithstanding the fact that the licensee successfully completed a drug diversion program." (Sen. Analysis, *supra*, at p. 1.) Moreover, adoption of a blanket exception makes sense given the public safety concerns that are specific to the particular subset of licensees who fall within the ambit of Section 492.

---

[6] We take judicial notice of this legislative history and supporting documentation. (Evid. Code, §§ 451, 452, 459; *Schmidt v. Southern Cal. Rapid Transit Dist.* (1993) 14 Cal.App.4th 23, 30, fn. 10 ["[i]n a search to discern legislative intent, an appellate court is entitled to take judicial notice of the various legislative materials, including committee reports, underlying the enactment of a statute"].)

[7] We do not read *B.W.* so broadly. Rather, it appears that the holding acts as a complete bar to disciplinary actions only if they are initiated after the successful completion of the diversion program and the arrest record is the *sole source* of the information used to initiate the disciplinary proceedings. (*B.W.*, *supra*, 169 Cal.App.3d at p. 233; see, e.g., *Sandoval*, *supra*, 225 Cal.App.3d at p. 1502 [distinguishing *B.W.* because, among other reasons, the dismissals at issue were based on testimony of the arresting officer "regarding the events leading up to the arrest"].)

As the bill's sponsor—the Department of Consumer Affairs (department)—indicated, the perceived problem created by *B.W.* was "particularly acute for the Board of Medical Quality Assurance, Board of Pharmacy, Board of Registered Nursing, and Board of Vocational Nurse and Psychiatric Technician Examiners.  Since the licensees of these boards have easy access to drugs and their jobs are often stressful, they experience a higher instance of substance abuse."  (Cal. Dept. of Consumer Affairs, Bill Analysis of Sen. Bill No. 1303 (1986–1987 Reg. Sess.) Apr. 6, 1987, p. 2.)  The department elaborated as follows:  "Drug abuse by licensees of the healing arts boards presents a special danger to consumers since they rely upon the advice and services of health care providers to maintain their families' good health.  This bill would enable the department's healing arts boards to continue to discipline licensees for drug use regardless of the fact that the offender completed a court-ordered drug diversion program. Without this legislation a primary function of healing arts boards, the protection of the health and safety of consumers through discipline of licensees, is limited severely."  (*Id.* at p. 3; see also Assem. Com. on Health, Rep. on Sen. Bill No. 1303 (1986–1987 Reg. Sess.) Aug. 18, 1987, p. 2 [noting that "[t]he issue before the Legislature is whether the opportunity for rehabilitation and treatment are the only factors that should be considered when drug violations are discovered" and that "[t]he sponsor believes that *review of the record* for evidence of professional misconduct is also relevant if the licensing boards are to protect the public," italics added].)

Even before the enactment of Section 492, the appellate court in *B.W.* itself recognized that physicians occupy "a unique and centralized position in the overall elaborate regulatory scheme established by the Legislature to control dangerous drugs and narcotics."  (*B.W.*, *supra*, 169 Cal.App.3d at p. 230.)  Indeed, such medical professionals "literally ha[ve] 'the "keys to the safe." ' "  (*Ibid.*)  Thus, the public safety rationale underlying the enactment of Section 492 supports the broad construction suggested by the plain language of the statute.

Additionally, the construction of Section 492 suggested by Dr. Erdle—which would allow disciplinary proceedings after successful diversion only to the extent that the

8

alleged misconduct at issue could be independently proven without the use of arrest records—must also be rejected because it could clearly lead to irrational results, some of which have been illustrated by this case. For example, if we were to endorse the doctor's construction of section 492, two entirely similarly situated physicians accused of the same misconduct could be treated very differently based solely on the random ability of the arresting officer involved to recall the case without reference to the record of arrest. Under such circumstances, one physician might continue in practice while the other's license would be revoked, even if both represented identical risks to the public. Such a result seems arbitrary and in no way related to the public safety rationale underlying the statute. Moreover, the doctor's suggested approach would in all probability require numerous ancillary determinations and related litigation (of which this is but one example) on the issue of whether evidence presented at a disciplinary hearing is truly independent of the record of arrest—a situation that is hardly likely to "unclog" the courts.[8]

Finally, as the trial court itself acknowledged, "[m]ost police officers can't remember anything unless you show them their records." Thus, requiring police officers to testify from their independent recollection places them at an extreme disadvantage and could very well lead to erroneous testimony in these hearings where important issues of public safety are being determined. Indeed, it is our guess that, had the testimony of the arresting officer contradicted the arrest report in a way that was detrimental to the doctor in this case, he would be here arguing that the arrest record should have been admissible for purposes of impeachment, despite the "in any way" language of section 1000.4. "Where, as here, the language of the statute is fairly susceptible of two constructions, one

---

[8] What if, for example—as the Medical Board posits—the police officer in this case had refreshed his recollection six months before the hearing rather than immediately prior to testifying? Or, what if the resolution of this case happened to depend on the exact extent to which the ALJ was permitted to rely on the Medical Board's investigatory report without running afoul of section 1000.4, and the courts were thus required to conduct a fact-specific inquiry into the source of the many statements contained in that report?

which in application will render such language reasonable, fair and harmonious with its manifest purpose, and another which will be productive of absurd consequences, the former construction will be adopted." (*B.W.*, *supra*, 169 Cal.App.3d at p. 230.) In this instance, we have no trouble concluding that, where an exception to the mandate of section 1000.4 has been expressly created for public safety reasons, that exception should be interpreted in a way that allows the best evidence of the misconduct at issue to be placed before the hearing officer so that the most informed decision regarding the scope of any required discipline can be made.[9]

We thus conclude, albeit under a different rationale, that the ALJ did not err in admitting the testimony of the police officer in this case. Below, the trial court decided that—if the testimony of the arresting officer was excluded—there was "no persuasive evidence that [the doctor] possessed cocaine." Implicit in this determination is the

---

[9] Although unnecessary to our resolution of this matter, we note that the recent amendments to section 1000 et seq. appear to support our conclusion that the Legislature, in enacting Section 492, intended a complete exemption for the specified healing arts boards from the requirements of section 1000.4. (See Stats. 2017, ch. 778, § 5.5.) As stated above, the legislation is largely focused on converting the deferred entry of judgment program authorized by section 1000 et seq. into a pretrial diversion program. (*Id.*, Legis. Counsel's Dig.) However, it also amends section 1000.4 to include the exception created by Section 492 directly in the text of that statute. (*Id.*, §§ 5.5 & 9.) Thus, as amended, section 1000.4 now provides that the record of arrest for a successful divertee shall not be used "in any way . . . , except that, as specified in Section 492 of the Business and Professions Code," successful diversion shall not prohibit the specified healing arts boards from taking disciplinary action against a divertee for professional misconduct, "notwithstanding that evidence of that misconduct may be recorded in a record pertaining to an arrest leading to successful completion of a pretrial diversion program." (§ 1000.4, subd. (a).) In addition, new subdivision (b) of amended section 1000.4 further provides that any licensing agency listed in section 144 of the Business and Professions Code (including the Medical Board) "may request, and is authorized to receive, from a local or state agency certified records regarding referral to, participation in, successful completion of, and termination from, diversion programs described in this section." (*Id.*, subd. (b); see also Bus. & Prof. Code, § 144, subd. (b)(14).) We read these changes as further illustrating the Legislature's intent to allow the unrestricted use of arrest records and related information by the specified boards when making disciplinary determinations.

corollary that if the officer's testimony is considered, the evidence is sufficient to support the Medical Board's disciplinary action. Were this not the case, the trial court could have resolved the matter without reaching the merits of the statutory interpretation question here at issue. Having reviewed the administrative record, we have no difficulty concluding that this implied finding is supported by substantial evidence. (*Rand*, *supra*, 206 Cal.App.4th at p. 574 [trial court's factual findings in this context reviewed for substantial evidence].) Thus, the Medical Board's disciplinary action should be affirmed.[10]

## III. DISPOSITION

The Medical Board's writ petition is granted. Let a peremptory writ of mandate issue directing respondent superior court to (1) vacate its order granting the petition for writ of administrative mandate, the judgment granting a peremptory writ of mandate, and the related writ; and (2) enter in their place an order denying Dr. Erdle's petition. The stay of the trial court proceedings issued on May 5, 2017, is hereby lifted. Each party to bear their own costs.

---

[10] In reaching this decision, we reject the specific evidentiary arguments raised by Dr. Erdle in his return to the alternative writ as unsupported by the record. In addition, given our resolution of this matter, we decline the Medical Board's request that we strike the doctor's return as procedurally defective.

11

REARDON, J.

We concur:

_____
RUVOLO, P. J.

_____
RIVERA, J.

A151175/Medical Bd. of California v. Superior Court

Trial Court:    San Francisco City & County Superior Court

Trial Judge:    A. James Robertson II, J.

Counsel:    Xavier Becerra, Attorney General, Gloria L. Castro, Senior Assistant
            Attorney General, Robert McKim Bell and E. A. Jones III,
            Supervising Deputy Attorneys General, Peggy Bradford Tarwater,
            Deputy Attorney General, for Petitioner.

            No appearance for Respondent.

            Nossaman, Mitchell J. Green and Morgan Muir Callahan for Real Party in
            Interest.