Filed 2/11/21

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>REGINALD BURGESS,<br><br>　　Defendant and Appellant. | D076287<br><br><br>(Super. Ct. No. SCD279344) |

APPEAL from a judgment of the Superior Court of San Diego County, Laura H. Parsky, Judge.  Affirmed.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters and Julie L. Garland, Assistant Attorneys General, Melissa Mandel and A. Natasha Cortina, Deputy Attorneys General, for the Plaintiff and Respondent.

Months after a Pennsylvania court ordered Reginald Burgess be put on supervised probation, a jury in California convicted him of violating Penal Code[1] section 29815, possession of a firearm in violation of an express

_____

[1]     Undesignated statutory references are to the Penal Code.

condition of probation. The superior court suspended imposition of sentence and granted Burgess three years' probation with various conditions, ordering that he could move to reduce the felony conviction to a misdemeanor upon 18 months of successful probation. Burgess contends insufficient evidence supports his conviction. Specifically, pointing to a Judicial Council jury instruction, CALCRIM No. 2512, he argues an essential element of the section 29815 offense was not met, namely his violation of a court order that he not own or possess a firearm. Burgess maintains that because the Pennsylvania probation department directly set the conditions of his probation, there was no court order for purposes of the offense.

We reject these contentions. Interpretation of section 29815 is not guided by form jury instructions, which are not the law. Section 29815 applies to any individual prohibited from possessing firearms "as an express condition of probation." (§ 29815.) Neither section 29815 nor its predecessor statute, former section 12021 subdivision (d), contain a requirement that the probation condition be ordered by a court; we conclude that the statutory language merely requires the probationer be bound by the condition. Because the People proved Burgess had agreed to a condition of probation specifically restricting his possession of firearms, and substantial evidence supports his possession of such firearms in California while subject to the probation condition, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*Philadelphia, Pennsylvania*

In 2018, Burgess pleaded guilty to a misdemeanor charge in Philadelphia, Pennsylvania. A judge sentenced Burgess to a maximum of three years' probation, during which Burgess was subject to supervision by

the Philadelphia Probation Department.[2] Immediately after sentencing, a deputy escorted Burgess directly from the courtroom to a probation officer who supervises individuals living outside of the Commonwealth of Pennsylvania. Burgess met with the officer and received the terms of his probation that same day.

The Philadelphia Adult Probation and Parole Department is a department under the First Judicial District whose probation officers are not judges with authority to issue court orders. A subdivision of the probation department is staffed by two officers who process individuals placed on probation in Philadelphia but residing outside Philadelphia County. That unit's procedure allows an individual on probation in a "sending state" to reside in a different state under supervision of the "receiving state" while remaining subject to the rules of the sending state. The receiving state must accept the supervision and may also impose additional conditions on the individual. As a result, an individual placed on probation in Philadelphia remains subject to the jurisdiction and supervision of the Philadelphia Probation Department at all times before and after the receiving state accepts supervision.

One officer in the Interstate Compact Unit is always stationed at the courthouse in Philadelphia to process interstate transfer cases. Because Burgess provided the court with a California address and indicated he wished

---

[2] Burgess's negotiated guilty plea sentencing order provides in part: "[T]his 23rd day of August[ ] 2018, the defendant having pled guilty and is adjudged guilty in the above-captioned case is hereby sentenced by this court as follows: [¶] Count 1 . . . [¶] To be placed on probation—county regular probation—for a maximum period of 3 year(s) to be supervised by adult probation department." It further states: "The following judge ordered conditions are imposed: [¶] . . . [¶] Other [¶] Probation is non-reporting." (Some capitalization omitted.)

to return to California, he met with Philadelphia, Pennsylvania Probation Officer Ronnie Ford. Officer Ford gave Burgess a number of forms, including an application for interstate compact transfer, the department "Rules of Probation & Parole," and a "Firearms Surrender Policy." (Some capitalization omitted.) Officer Ford explained the rules of probation form to Burgess, and Burgess signed all of the forms.

The application for interstate compact transfer provides in part: "In support of my application for transfer, I make the following statements: [¶] . . . [¶] . . . 2. I will comply with the terms and conditions of my supervision that have been placed on me, or that will be placed on me by Pennsylvania (sending state) and C[alifornia] (receiving state). [¶] 3. I understand that if I do not comply with all the terms and conditions that the sending state or the receiving state, or both, placed on me, that it will be considered a violation and there may be consequences including return to the sending state."[3]

Both the firearms surrender policy and the department rules of probation prohibited Burgess from possessing firearms or any other deadly weapon. The department rules of probation state: "You have been placed on

---

[3] That document also provides: "I understand that my supervision in another state may be different than the supervision I would be subject to in this state, and that the receiving state will determine the manner in which I will be supervised. I agree to accept any differences that may exist because I believe that transferring my supervision to C[alifornia] (receiving state) will improve my chances for making a good adjustment in the community. I FULLY UNDERSTAND AND ACKNOWLEDGE ALL OF THE ABOVE CONDITIONS AND FREELY AND KNOWINGLY WAIVE ANY CHALLENGE TO THESE REQUIREMENTS OF TRANSFER, INCLUDING THE CONDITIONS OF SUPERVISION IN THE STATE TO WHICH I REQUEST TRANSFER. In doing so I respectfully request the authorities to whom this application is made to consider my request for transfer of supervision."

4

probation and/or parole and are expected to comply with the following rules: [¶] You may <u>NOT</u>: [¶] Possess Firearms or any other deadly weapons." The surrender policy provides: "I am aware that while under the supervision of the Philadelphia Adult Probation and Parole Department, I am disqualified from owning or having possession of any firearms or other deadly weapons. I understand that if I have a firearm or other type of weapon, I have 10 days from today to dispose of the weapon(s)." Burgess checked boxes indicating that he does not "own or have possession of a firearm." He was not told by the judge that he could not possess or own firearms.

Burgess left the courthouse without returning to the courtroom. He thereafter returned to California, where he was ordered to report to probation.

*San Diego, California*

Burgess met with San Diego Probation Officer Marcelle Brown, an officer assigned to the transfer unit, which determines whether out-of-state individuals will be accepted for supervision in California. Burgess told Probation Officer Brown he did not own any weapons. After the initial meeting, Burgess was slow to respond to communications, and the probation department sent a team of officers to Burgess's residence to verify his address.

Burgess was present when officers arrived and he consented to a search of his home. The officers found 70 guns, including handguns, shotguns, and rifles, as well as an estimated five thousand rounds of ammunition and three gun safes. As a result, the People charged Burgess with, among other offenses, the section 29815 offense of possession of a firearm in violation of an express condition of probation. He pleaded not guilty.

5

Burgess's case proceeded to trial on the section 29815 charge and several other charges. The jury deadlocked on the section 29815 charge, and the court declared a mistrial on that count.

The People retried Burgess on the section 29815 charge. The court instructed the jury with CALCRIM No. 2512 as follows: The defendant is charged in Count 1 with unlawfully possessing a firearm in violation of Penal Code section 29815. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] One, the defendant owned or possessed a firearm. [¶] Two, the defendant knew that he owned or possessed the firearm. [¶] And three, a court had ordered that the defendant not own or possess a firearm. [¶] . . . [¶] You may consider evidence, if any, that a court ordered the defendant not to own or possess a firearm only in deciding whether the People have proved this element of the crime. Do not consider such evidence for any other purpose."

The jury found Burgess guilty of violating section 29815. This appeal followed.

## DISCUSSION

Burgess's sole challenge is to the sufficiency of the evidence. He maintains his section 29815 conviction must be reversed because no evidence shows his firearm restriction probation condition was ordered by the Pennsylvania court. He points to the language in two jury instructions, CALCRIM Nos. 2512 and 3500, the first stating the jury must find a court ordered the firearm restriction and the second stating that his charge was "possession of a firearm by a person prohibited by a court order." From these, Burgess argues an essential element of the offense—a court-ordered firearms restriction probation condition—has not been met.

6

Though Burgess frames his attack as on the sufficiency of the evidence, it implicates an issue of statutory construction. In our view, to address his challenge we must first interpret section 29815 and decide whether it includes an element of a court-ordered firearm restriction, or whether it applies to a probationer like Burgess who agreed to firearm possession restrictions contained in probation department rules or policies. After we resolve that question, we can then address whether sufficient evidence supports Burgess's conviction under section 29815.

## I. *Standards of Review*

We review questions of statutory interpretation de novo, keeping in mind our task is to ascertain the lawmakers' intent so as to effectuate the statute's purpose. (*Coker v. JPMorgan Chase Bank, N.A.* (2016) 62 Cal.4th 667, 674.) We first examine the text of the statute, giving it a " 'plain and commonsense meaning . . . in the context of the statutory framework as a whole.' " (*People v. Partee* (2020) 8 Cal.5th 860, 867; *People v. Gonzales* (2018) 6 Cal.5th 44, 50; *Coker*, at p. 674.) If the language is clear and unambiguous, the plain meaning governs and we do not engage in judicial construction or resort to indicia of legislative intent. (See *People v. McCullough* (2013) 56 Cal.4th 589, 592; *MCI Communications Services, Inc. v. California Dept. of Tax & Fee Administration* (2018) 28 Cal.App.5th 635, 643; *In re Reyes P.* (1994) 24 Cal.App.4th 1468, 1470.)

To decide whether substantial evidence supports the jury's finding that Burgess possessed firearms in violation of an express condition of his probation, " 'we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt.' " (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.) We assess the evidence " 'in the light most favorable to the prosecution,' "

7

presuming " 'every fact the jury could reasonably have deduced from the evidence.' " (*Ibid.*)  We will not reverse unless it appears " ' "that upon no hypothesis whatever is there sufficient substantial evidence to support" the jury's verdict.' " (*Ibid.*)

II. *Section 29815 Requires a Binding Probation Condition*

Section 29815 subdivision (a) provides:  "Any person who, as an express condition of probation, is prohibited from owning, possessing, controlling, receiving, or purchasing a firearm and who owns, purchases, receives, or has in possession under custody or control, any firearm . . . is guilty of a public offense . . . ."  Subdivision (b) of section 29815 states:  "The court, on forms provided by the Department of Justice, shall notify the department of persons subject to this section.  The notice shall include a copy of the order of probation and a copy of any minute order or abstract reflecting the order and conditions of probation."

Section 29815 replaced former section 12021, subdivision (d) in the Deadly Weapons Recodification Act of 2010, a non-substantive reorganization of Penal Code sections 12000 through 12809.  (Senate Committee on Public Safety, analysis of Sen. Bill No, 1080 (2009-2010 Reg. Sess.) as amended Mar. 23, 2010, p. 7; § 16000.)  All provisions in the Deadly Weapons Recodification Act are considered a continuation of the previous statutes in the Dangerous Weapons Control Law, and the Legislature explicitly stated that decisions under the former Dangerous Weapons Control Law are "relevant" in interpreting any provision under the recodification.  (§§ 16010, subd. (a), 16020.)

The law has a public safety purpose: the Legislature's goal in enacting former section 12021 was to " 'conserve the public welfare . . . [and] to ensure the public safety by preventing the unlawful use of firearms.' " (*People v.*

8

*King* (1978) 22 Cal.3d 12, 14; accord, *People v. Robinson* (2011) 199 Cal.App.4th 707, 714 [purpose of former section 12021 "is to protect the public welfare by precluding the possession of guns by those who are more likely to use them for improper purposes"].) The express public safety purpose is an indication the Legislature intended the law apply as broadly as possible. (Accord, *People v. Frahs* (2020) 9 Cal.5th 618, 630 [agreeing with Court of Appeal that express public safety purpose of the statute indicated " 'the Legislature intended the [diversion] program to apply as broadly as possible' "]; *Medical Bd. of California v. Superior Court* (2018) 19 Cal.App.5th 1, 7 [remedial purpose of statute evinced a legislative intent that its protections " 'be given the broadest application' "].)

An understanding of section 29815's elements is not assisted by the Judicial Council jury instructions Burgess cites. Standard Judicial Council jury instructions " 'are not themselves the law, and are not authority to establish legal propositions or precedent.' " (*People v. Diaz* (2015) 60 Cal.4th 1176, 1187, fn. 6; *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Construction Co.* (2018) 5 Cal.5th 216, 224, fn. 5; *People v. Covarrubias* (2016) 1 Cal.5th 838, 876, fn. 16; *People v. Smith* (2014) 60 Cal.4th 603, 614; *People v. Morales* (2001) 25 Cal.4th 34, 48, fn. 7.) Because the instructions are not binding, whatever the Judicial Council intended by them does not affect our analysis. (*People v. Diaz*, at p. 1188, fn. 7.) This settled principle disposes of the main premise of Burgess's assertion that an essential element of a section 29815 offense is that a *court* order or impose the firearms probation restriction on a defendant.

Section 29815 criminalizes the ownership, possession, and control of firearms by a person who is prohibited from doing so "as an express condition of probation." (§ 29815, subd. (a).) That the defendant is barred from owning

9

or possessing firearms means he or she must be bound by the condition. Here, Burgess signed the forms by which the Pennsylvania probation department imposed the conditions, agreeing to them. Section 29815's only limitation as to the nature of the firearms restriction probation condition is that it be "express." The dictionary definition of the term "express" is that the condition must be "directly, firmly, and explicitly stated." (Merriam-Webster's Online Dict. (2021), <http://merriam-webster.com/dictionary> "express," definition entry No. 2 (1)(a).) That standard is met here. Burgess signed and thereby agreed to probation conditions prohibiting him from possessing firearms in "explicitly stated" language, that is, they "disqualified [him] from owning or having possession of any firearms or other deadly weapons" and stated he "may NOT [. . .] possess firearms or any other deadly weapons."

Subdivision (b) of section 29815 is simply a notice provision, requiring the court to notify the Department of Justice of persons subject to a firearms restriction probation condition, in part by including a copy of the order of probation or other document (order or abstract) reflecting the order and conditions of probation. Nothing in this subdivision suggests that the probation condition must be ordered by a court; the fact it refers to an "abstract reflecting the order and conditions of probation" shows the Legislature contemplated such conditions might be reflected in documents other than a court order.

To accept Burgess's argument would mean that a violation of section 29815 would stand or fall depending on probation procedures across the states. We decline to attribute an intent by the Legislature to exclude from section 29815 defendants whose binding probation conditions are established through a different procedure than that used in California. To do so would be

contrary to the plain language used in the statute, and would also " 'lead to absurd results' " (*Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1037 [courts are to avoid statutory interpretations that lead to absurd results]; *People v. Rodriguez* (2012) 55 Cal.4th 1125, 1131), particularly where the public safety purpose of the statute compels a broad construction.

As stated, in enacting former section 12021, the Legislature aimed to "conserve the public welfare" by preventing the unlawful use of firearms. (*People v. King, supra,* 22 Cal.3d at p. 21.) Further, provisions of the Penal Code "are to be construed . . . with a view to effect its objects and to promote justice." (*Id.* at p. 23.) Justice would not be promoted, and the public safety purpose would be frustrated, by interpreting section 29815 to treat two similarly-situated defendants differently: a probationer barred from possessing firearms in California where the sentencing court orders a firearms restriction as a term of probation would violate section 29815; but a probationer barred from possessing firearms in a different state where a probation department imposes the terms at the court's direction would not.

III. *Substantial Evidence Supports Burgess's Conviction*

We turn to whether Burgess's conviction is supported by substantial evidence. As indicated above, Burgess signed and was bound by both the department rules of probation and the firearms surrender policy, both of which specifically prohibited him from possessing guns. He signed the application for interstate transfer, which required compliance with "the terms and conditions of [ ] supervision that have been placed . . . by Pennsylvania (sending state) and C[alifornia] (receiving state)." Burgess does not contest that he was in possession of dozens of guns when officers searched his home. The straightforward, uncontested evidence constitutes

11

substantial evidence supporting the jury's finding that Burgess was found in possession of firearms in violation of an express condition of his probation.

DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

BENKE, J.